OPINION
{¶ 1} Appellant, Gloria House, appeals from a final judgment and decree of divorce entered by the Lake County Common Pleas Court, Domestic Relations Division. She asserts that a temporary support order that ordered her to pay a portion of the parties' mortgage payments during the pendency of the divorce case was an order to pay a marital debt that should have been discharged in bankruptcy. She also questions why the temporary support order was not modified when she moved back into the marital home, also during the pendency of the divorce case. We find no abuse of discretion on the part of the trial court and, therefore, affirm the judgment entry of the trial court.
 {¶ 2} The parties were married in 1981. They have two children. By the time of the divorce decree in April 2005, one child had been emancipated, and the other child was within two months of being emancipated.
 {¶ 3} Michael House filed for divorce in March 2002. He also filed motions for pendente lite child support and spousal support.
 {¶ 4} On April 5, 2002, the trial court ordered Gloria House to pay temporary child support in the amount of $260.85 per child, per month. The court also ordered her to pay toward the mortgage obligations as follows:
 {¶ 5} "2. Defendant-wife, Gloria House shall pay towards the first mortgage on the house as her own expense the sum of $812.00 per month directly to the mortgagee and shall keep same current and plaintiff-husband, Michael House shall pay the balance of the first mortgage and all the equity line (second mortgage) on the house as his own expense directly to the mortgagee on a monthly basis and shall keep same current."
 {¶ 6} The record shows that Gloria House made all of the court-ordered child support payments of $260.85 per child, per month during the period April 5, 2002, up to and including April 8, 2004, the date of the final hearing. However, she made none of the court-ordered payments of $812 per month toward the first mortgage. Michael House made all such payments; and, as of the hearing date, the total accrued arrearage of such payments amounted to $19,488.
 {¶ 7} The trial of this case was heard by a magistrate. At the hearing, the parties stipulated that the value of the marital residence was $200,000; and that when the first mortgage and equity line of credit were taken into account, it had negative equity of $7,708. The two mortgage payments were in the total amount of $1,750.
 {¶ 8} Additional findings of fact were made by the magistrate: Gloria House vacated the marital residence in February 2002 and returned in April 2002. During that time, she rented an apartment in Painesville for $575 per month. She again vacated the marital residence in November 2002, returning at the end of March 2003. During the latter period, she obligated herself for a condominium lease for twelve months at the rate of $800 per month plus utilities. As of April 2004, when the final hearing took place, Gloria House was still residing in the marital residence.
 {¶ 9} In 2004, Michael House was earning $47,600 annually; and for 2003, he earned $46,431. Gloria House earned $40,873.83 in 2003.
 {¶ 10} The magistrate decided that Gloria House owed Michael House for "unpaid mortgage payments [in] the amount of $16,806.42 for which judgment is rendered and execution may issue with interest at the rate of 10% per annum." The amount of the judgment reflected property division adjustments, which lowered the amount due from $19,488 to $16,806.42.
 {¶ 11} Gloria House filed objections to the magistrate's decision. The trial court overruled her objections.
 {¶ 12} Gloria House filed bankruptcy on July 16, 2004, which caused a stay of her divorce proceedings until her discharge in bankruptcy on October 19, 2004.
 {¶ 13} On April 20, 2005, the trial court entered a final judgment and decree of divorce. The judgment entry awarded judgment to Michael House in the amount of $16,806.42 plus ten percent interest, and recited that the judgment "is in the nature of support representing unpaid arrears on the order of support pendente lite." The judgment entry also terminated the pendente lite order of child support as of March 7, 2005, the eighteenth birthday of the parties' younger child.
 {¶ 14} Gloria House filed a timely appeal from the judgment entry of April 20, 2005, raising the following two assignments of error:
 {¶ 15} "[1.] The trial court erred by holding that appellant's debt obligations were in the nature of support.
 {¶ 16} "[2.] The trial court abused its discretion by denying appellant's motion to modify the pendente lite order of support."
 {¶ 17} The granting of temporary spousal support is within the trial court's sound discretion.[1] Gloria House is challenging that discretion by arguing that the trial court should not have issued a judgment for $16,806.42 in the decree of divorce based upon arrearages that had accrued from its temporary spousal support order. This court will not disturb that ruling absent an abuse of discretion. As stated by the Supreme Court of Ohio:
 {¶ 18} "The trial court's judgment cannot be disturbed on appeal absent a showing that the trial court abused its discretion.
 {¶ 19} "* * *
 {¶ 20} "`The term "abuse of discretion" connotes more than an error of law [or] judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"[2]
 {¶ 21} Inasmuch as the judgment entry being appealed from awards judgment to Michael House in respect of temporary spousal support arrearages accumulated during the pendency of the divorce case, it is necessary to examine whether the trial court properly rendered a temporary spousal support order that could then be reduced to judgment at the time of the final decree of divorce. Had the temporary spousal support order not been reduced to judgment, the temporary spousal support order would have been merged into the final decree and the temporary order would have been unenforceable.[3]
 {¶ 22} Civ.R. 75(N)(1) provides as follows:
 {¶ 23} "(1) When requested in the complaint, answer, or counterclaim, or by motion served with the pleading, upon satisfactory proof by affidavit duly filed with the clerk of the court, the court or magistrate, without oral hearing and for good cause shown, may grant spousal support pendente lite to either of the parties for the party's sustenance and expense during the suit and may make a temporary order regarding the support, maintenance, and allocation of parental rights and responsibilities for the care of the children of the marriage, whether natural or adopted, during the pendency of the action for divorce, annulment, or legal separation."
 {¶ 24} "Spousal support pendente lite" is used interchangeably with the term "temporary spousal support."[4]
 {¶ 25} The Sixth Appellate District has stated the purpose of temporary spousal support:
 {¶ 26} "Temporary spousal support orders are exactly that: temporary. It is the purpose of such orders to provide an economically disadvantaged spouse a means of maintaining herself or himself during the pendency of the action. See R.C.3105.18(B). A final order is rendered only after a hearing is held and the court considers the evidence presented in light of the factors enumerated in R.C. 3105.18(C). When a final order is rendered, a temporary award is merged into the final decree."[5]
 {¶ 27} In exercising its discretion whether to award temporary spousal support, the trial court must consider two factors: the ability to pay of the party against whom the award is made and the needs of the receiving party. As stated by the Eighth Appellate District, these factors are to be measured against the parties' standard of living prior to filing for divorce:
 {¶ 28} "`The factors to be considered in making [temporary spousal support] awards are the ability of the party against whom the order is made to pay, and the present needs of the party in whose favor the award is given, judged by the standard upon which the parties lived prior to the time domestic difficulties occurred, provided such standard was the free choice of the parties during such period of time.'"[6]
 {¶ 29} The record shows that the circumstances of the parties at the time the temporary spousal support order was made qualified for a temporary spousal support order: Gloria House had the ability to pay, Michael House needed the payment in order to pay both mortgage payments for which the parties had obligated themselves, and the parties had lived according to this debt-sharing arrangement prior to the divorce.
 {¶ 30} As stated by the trial court, "[t]he record is clear the parties relied on credit cards and loans to support the family throughout their marriage." Other than the mortgage debt, the parties had incurred approximately $24,000 of marital debt prior to the divorce. This debt was allocated equally to each party, and Gloria House has not objected to this allocation. The court concluded that this was an equitable allocation based upon the circumstances the parties had presented to the court at the time of the final hearing.
 {¶ 31} Gloria House's income in 2003 represented approximately forty-seven percent of the gross household income of the parties. The two mortgage payments were in the total amount of $1,750. Gloria House was ordered to pay $812 per month toward the total payments. This was within a few dollars of being exactly proportional to the percentage that her income bore to the parties' gross household income. Thus, the temporary support order to pay $812 per month reflects her fair share of the mortgage obligation to be borne by both parties.
 {¶ 32} When the temporary order was rendered, the magistrate apportioned the mortgage obligation according to the circumstances that the parties themselves had created and framed the payment thereof as temporary spousal support. Gloria House testified that neither party could have paid the mortgage obligation by himself or herself. The best the court could accomplish was to fairly apportion the mortgage obligation in terms of a temporary spousal support order so as to prevent a total financial collapse of the household during the pendency of the divorce.
 {¶ 33} In our judgment, the trial court did not abuse its discretion in ordering Gloria House to pay a portion of the two mortgage payments contracted for by the parties during their marriage.
 {¶ 34} Further, the trial court did not abuse its discretion in characterizing as "support" the temporary spousal support arrearage that had accrued during the pendency of the case.
 {¶ 35} Whether an obligation is in the nature of support or in the nature of a debt is often presented in the bankruptcy context, where the bankruptcy court must decide the nature of the obligation. If it is support, it is nondischargeable under the exception provided in Section 523(a)(5), Title 11, U.S.Code; if it is merely a debt, it is dischargeable, unless it meets some other exception. In this context the United States Court of Appeals for the Sixth Circuit has promulgated the following rule:
 {¶ 36} "[T]he [bankruptcy] court should look to the traditional state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.
 {¶ 37} "An award that is designated as support by the state court and that has the above indicia of a support obligation * * * should be conclusively presumed to be a support obligation by the bankruptcy court. * * * and [it] is thus nondischargeable."[7]
 {¶ 38} Applying the rule of the Sixth Circuit to the instant case, the temporary spousal support order that required Gloria House to contribute toward the mortgage payment was in the nature of nondischargeable support, instead of merely being a debt obligation. The trial court labeled it as support, and, though the trial court ordered her to pay it directly to the mortgagee instead of to Michael House, we view this as a matter of convenience and not an assumption of the mortgage obligation. Finally, the payment was contingent in the sense that it was a temporary order that was bound to expire upon the journalization of the decree of divorce. As stated by the Sixth Circuit, therefore, the temporary order is conclusively presumed to be in the nature of support.[8]
 {¶ 39} For the same reasons, the trial court properly characterized as "support" the temporary spousal support arrearage that had accrued with respect to the unpaid mortgage payments. Michael House was at an economic disadvantage during the divorce in terms of paying both mortgage payments without Gloria House contributing to the mortgage obligations. R.C.3105.18(B) allows the trial court to award "reasonable temporary spousal support" during the pendency of the divorce. We find that, based upon the circumstances of the parties at the time the temporary spousal order was rendered, the order of the trial court was reasonable. We find no abuse of discretion on the part of the trial court in the original rendition of the temporary spousal support order, nor in reducing the temporary spousal order to judgment in the decree of divorce.
 {¶ 40} However, pursuant to App.R. 12(A)(1)(a), we modify the judgment of the trial court in respect of the interest rate allowed on the judgment.
 {¶ 41} The trial court awarded judgment to Michael House in the amount of $16,806.42, together with interest at the rate of ten percent per annum from April 20, 2005. However, the Ohio General Assembly changed the law respecting interest on judgments to "interest at the rate per annum determined pursuant to section5703.47 of the Revised Code."[9]
 {¶ 42} A similar situation was presented in the case ofHasch v. Hasch, where the trial court awarded judgment as of April 22, 2005 and, also, awarded interest on the judgment at the rate of ten percent. As explained by the Third Appellate District in that case:
 {¶ 43} "[T]he trial court erred in requiring interest on its judgment at a rate of 10%. Pursuant to R.C. 1343.03, as effective June 2, 2004, the appropriate interest rate on a judgment is determined pursuant to R.C. 5703.47. R.C. 5703.47 provides that the federal short term interest rate shall be determined on October 15 of each year. * * * The final judgment in this matter was filed on April 22, 2005. Pursuant to the Ohio Tax Commissioner's Computation, the applicable maximum [interest] rate under R.C. 5703.47 is 5%."[10]
 {¶ 44} Therefore, the interest rate on the judgment awarded by the trial court is modified to five percent.
 {¶ 45} The first assignment of error is without merit.
 {¶ 46} Moreover, with respect to the second assignment of error, we find no abuse of discretion on the part of the trial court in failing to modify the temporary spousal support order when Gloria House returned to the marital residence in March 2003.
 {¶ 47} Gloria House moved out of the marital residence in February 2002, returning in April 2002. She again moved out in November 2002, returning at the end of March 2003. In May 2003, each party filed a motion to have the other party vacate the residence. Suffice it to say that in 2002 and 2003 the parties had difficulty living under the same roof. Gloria House's reasons and motives for moving out of the residence and then returning are not clear from the record, and we do not pass judgment on what they may have been. Whatever her reasons or motives were, she could not expect to move out, rent an apartment for $575 per month, move back in, move out again, sublease a condominium for $800 per month, plus utilities, move back in, and not suffer any financial consequences for her decisions. Further, whatever her reasons or motives were for moving out twice, she was still residing in the residence two years after the temporary order, on the date of the final hearing.
 {¶ 48} The record shows that Gloria House did not raise this issue of modifying the temporary spousal support order until six months after she returned to the marital residence. She raised the issue by filing objections to the temporary spousal support order in September 2003. During those prior six months, she devoted her energies to motions to cause Michael House to vacate the residence, to stop interfering with her use of an automobile, and to have a guardian ad litem appointed for the child still a minor. Ruling on the objections was continued by the trial court until the final hearing.
 {¶ 49} Following the final hearing, the magistrate found that, in addition to not paying her share of the mortgage payment in accordance with the temporary spousal support order, Gloria House made little or no contribution to the household after she returned to the marital residence. Thus, the magistrate recommended that her request for modification should be denied. The magistrate stated:
 {¶ 50} "During the period from February, 2002 to the final trial when [Gloria House] has resided in the marital home she made no electric, gas, water, sewer, garbage payments for the marital home. She has not paid any monies toward the real estate taxes or real estate insurance. She has paid no monies toward the life insurance, the joint credit cards or the satellite cable. She has been making payments toward her own car insurance and the YMCA family membership plus the payments on the condominium sub-lease which she vacated. She has not provided any monies toward the childrens' [sic] car insurance nor does she pay any monies toward the home maintenance. [Gloria House] says she bought some groceries for the family, but testified nobody probably saw her bring them into the home."
 {¶ 51} In light of the fact that Gloria House made little or no contribution to the household after she returned to the marital residence, it would have been an abuse of discretion for the trial court to modify its temporary spousal support order and, in effect, give aid and comfort to her shirking of her marital obligations.
 {¶ 52} The trial court agreed with the magistrate that the temporary spousal support order should not have been modified when Gloria House returned to the marital residence. As stated by the trial court in ruling on Gloria House's separate objections to the magistrate decision issued after the final hearing:
 {¶ 53} "[I]t is incomprehensible to the Judge that [Gloria House] paid her lease and utility obligations on the condo yet ignored this Court's order as to her monthly payment towards the first mortgage on the house. Further, the record fails to show [Gloria House] took any action to renegotiate her sublease on the condominium. [Gloria House's] lack of good judgment does not excuse her from her court ordered obligation herein."
 {¶ 54} This court finds no abuse of discretion on the part of the trial court in not modifying the temporary spousal support award in respect of the fact that Gloria House moved back into the marital residence. The evidence presented at the final hearing warrants the conclusion that the order should not have been modified because of her failure to pay her share of court-ordered and non-court-ordered marital obligations.
 {¶ 55} The second assignment of error is without merit.
 {¶ 56} The judgment is modified to state that interest on the judgment shall be at the rate of five percent per annum. In light of this modification, the judgment is affirmed.
Diane V. Grendell, J., Colleen Mary O'Toole, J., concur.
[1] Rahm v. Rahm (1974), 39 Ohio App.2d 74, 78.
[2] (Internal citations omitted.) Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 218-219, quoting State v. Adams
(1980), 62 Ohio St.2d 151, 157. See, also, Lambert v. Lambert,
11th Dist. No. 2004-P-0057, 2005-Ohio-2259, at ¶ 20, citingKunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67.
[3] Colom v. Colom (1979), 58 Ohio St.2d 245, syllabus.
[4] Schwartz v. Schwartz (Apr. 20, 2001), 11th Dist. No. 2000-L-068, 2001 Ohio App. LEXIS 1834, at *1, fn. 1.
[5] Soley v. Soley (1995), 101 Ohio App.3d 540, 548, citingColom v. Colom, supra, syllabus.
[6] Michalosky v. Michalosky (May 2, 1985), 8th Dist. No. 49021, 1985 Ohio App. LEXIS 7566, at *11, quoting Stone v.Stone (1954), 98 Ohio App. 240, 243.
[7] Sorah v. Sorah (C.A.6, 1998), 163 F.3d 397, 401.
[8] Id.
[9] R.C. 1343.03(A).
[10] Hasch v. Hasch, 3d Dist. No. 4-05-15, 2006-Ohio-49, at ¶ 8.