OPINION
{¶ 1} Defendant-appellant, Kevin R. Doody, appeals the Judgment Entry of Divorce of the Lake County Court of Common Pleas, Domestic Relations Division, terminating his marriage to plaintiff-appellee, April W. Doody, and dividing the marital estate. For the following reasons, we affirm the decision of the court below.
 {¶ 2} Kevin and April Doody were married in Fairfield, Maine, on July 16, 1977. Three children were born as issue of the marriage, Zachary R. Doody, an emancipated *Page 2 
adult, Anisa A. Doody, emancipated during the course of these proceedings, and Autumn L. Doody, who died in infancy. In 1995, Kevin and April purchased a house located at 3757 Cull Road, in Perry, Ohio. In 1999, Kevin obtained work in Dayton, Ohio. April continued to reside in Perry and the parties maintained separate households in Dayton and Perry.
 {¶ 3} On November 7, 2002, April filed a Complaint for Divorce on the grounds of extreme cruelty, gross neglect of duty, and incompatibility. On November 15, 2002, Kevin answered and counter-claimed, admitting the ground of incompatibility. On January 9, 2003, Kevin filed an Amended Answer and Counterclaim, denying incompatibility and alleging, as grounds for divorce, adultery and gross neglect of duty.
 {¶ 4} At the time of the proceedings, the marital residence was encumbered by two mortgages. It was listed for sale at a price of $189,900.
 {¶ 5} A trial on the contested divorce was held on May 12, May 13, July 8, and September 16, 2004. Testimony was taken from Kevin and April Doody, Pam Morse, James Davis, and Thomas Valentino. Counsel for April testified regarding the reasonableness of her attorney fees.
 {¶ 6} On August 3, 2005, the magistrate issued his decision. The magistrate determined that April was entitled to a divorce on the grounds of gross neglect of duty and extreme cruelty and that Kevin was entitled to a divorce on the ground of adultery. The magistrate determined the length of the marriage to be from July 16, 1977, to May 12, 2004. The magistrate ordered each party to keep their respective motor vehicles, which lacked any equity value.
 {¶ 7} The magistrate determined that April possessed a 403(B) account and a retirement annuity account through her employment at Lake West Hospital. The *Page 3 
magistrate determined that Kevin possessed a 401K with Vanguard. The court ordered the parties to keep their respective accounts and ordered Kevin to pay April $1,048.00 to equalize the apportionment of these assets.
 {¶ 8} The magistrate divided the parties' personal property, awarding April items of personal property valued at $5,862 and Kevin items of personal property valued at $2,098. The magistrate ordered April to credit Kevin $275 for jewelry she retained, $350 for certain items she had sold after filing for divorce, and $1,999.02 for the reimbursement of medical bills. The magistrate determined that Kevin was entitled to the net proceeds of the sale of the marital residence but ordered Kevin to credit April $3,831.50 for her share of the equity in the residence. The magistrate ordered April to pay Kevin $1,882 to equalize the apportionment of the value of personal property.
 {¶ 9} The magistrate ordered April to be responsible for the parties' credit card debt and for appraisal fees owed to Pam Morse, and credited April $6,848 for Kevin's share of this debt.
 {¶ 10} Considering its apportionment of assets and debt in toto, the magistrate concluded that Kevin owed April the sum of $7,358.98,
 {¶ 11} The magistrate divided the responsibility for paying Anisa's outstanding medical bills incurred during her minority equally between the parties.
 {¶ 12} The magistrate ordered Kevin to pay April $1,300 a month in spousal support, commencing August 1, 2005, and continuing for 75 months thereafter or until the death of either party or the remarriage/cohabitation of April. The magistrate ordered Kevin to pay April $13,000 in gross for spousal support, representing the ten month period between the sale of the marital residence in October 2004, and the magistrate's *Page 4 
decision, within sixty days of the date of final judgment. The magistrate further ordered Kevin to contribute $9,000 toward April's attorney fees.
 {¶ 13} On August 17, 2005, Kevin filed objections to the magistrate's decision, consisting of three general objections and a supporting affidavit containing approximately 81 "specific and particular" objections. Kevin further requested an oral hearing on the objections and a continuance for time to obtain a written transcript of the trial before the magistrate and to file supplemental objections.
 {¶ 14} On August 23, 2005, the domestic relations court granted Kevin until October 24, 2005, to file the transcript and further objections.
 {¶ 15} On October 18, 2005, Kevin again moved the court for additional time to file transcripts and supplemental objections. The court granted Kevin's motion and ordered that transcripts and supplemental objections shall be filed no later than December 19, 2005.
 {¶ 16} On December 16, 2005, Kevin filed the following supplemental objections to the magistrate's decision: (1) the magistrate erred by allowing Kevin's attorney to withdraw from representation; (2) the magistrate erred by finding that April was entitled to a divorce on the grounds of extreme cruelty and gross neglect of duty; (3) the magistrate erred in his determination of the length of the marriage; (4) the magistrate erred in the division of property; (5) the magistrate erred in awarding temporary and in gross spousal support; (6) the magistrate erred in awarding attorney fees to April; (7) the magistrate erred in finding that Kevin has dispersed assets in derogation of the court's restraining orders; and (8) the magistrate made statements and/or findings that were not supported by the manifest weight of the evidence in approximately 45 specific instances. *Page 5 
 {¶ 17} An oral hearing on Kevin's objections was held before the domestic relations court on January 27, 2006.
 {¶ 18} On May 15, 2006, the domestic relations court ruled on Kevin's objections. The court found the magistrate erred in allowing Kevin's attorney to withdraw in the manner in which the attorney was allowed to withdraw, but held such error harmless since Kevin was given ample opportunity to obtain new counsel. The court also found that April had not proven that she was entitled to a divorce based on gross neglect of duty but, rather, only on the grounds of extreme cruelty. The remainder of Kevin's objections was overruled and the magistrate's decision was adopted.
 {¶ 19} On August 18, 2006, the domestic relations court entered a Judgment Entry granting the parties a divorce on the terms and conditions set forth in the magistrate's decision, as adopted and modified by the court in its May 15, 2006 Judgment Entry.
 {¶ 20} From this decision, Kevin timely appeals and raises the following assignments of error:
 {¶ 21} "[1.] The trial court erred as a matter of rule and law in arriving at final judgment in case 02-DR000760 by adopting the magistrate's decision without undertaking a de novo determination/independent review of Appellant's objections, as required by Civ.R. 53 and case law.
 {¶ 22} "[2.] The trial court erred as a matter of rule and law when it ordered Husband to pay Wife, as and for in-gross spousal support, the sum of Thirteen Thousand Dollars ($13,000.00) within sixty (60) days of the final Judgment Entry for divorce. *Page 6 
 {¶ 23} "[3.] The trial court erred as a matter of law and abused its discretion when it ordered Husband to pay Wife $1,300 per month, as and for spousal support, commencing August 1, 2005.
 {¶ 24} "[4.] The trial court abused its discretion and errs against the manifest weight of the evidence when it ordered husband to contribute to Wife's attorney fees, and pay to Wife, the sum of Nine Thousand Dollars ($9,000.00) within sixty (60) days of the date of this final entry."
 {¶ 25} In his first assignment of error, Kevin argues that the trial court failed to conduct a de novo review of the magistrate's decision in light of the objections raised.
 {¶ 26} The Civil Rules provide, "[i]n ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(b).
 {¶ 27} This court has observed: "As the ultimate finder of fact, the trial court must make its own factual determinations through an independent analysis of the issues and should not adopt the findings of the magistrate unless the trial court fully agrees with them. The trial court's role is to determine whether the magistrate has properly determined the factual issues and appropriately applied the law, and, if the magistrate has failed to do so, the trial court must substitute its judgment for that of the magistrate. Magistrates do not have the authority to render final judgments; therefore, the trial court remains responsible to critically review and verify the work of the magistrate to determine if the magistrate's findings of fact are sufficient to support the conclusions of law." Tulley v. Tulley, 11th Dist. No. 2000-P-0044, 2001-Ohio-4307, 2001 Ohio App. *Page 7 
LEXIS 4611, at *11-*12 (citations omitted) (emphasis sic); see, alsoAnspach v. Anspach, 11th Dist. No. 2006-G-2706, 2006-Ohio-6344, at ¶ 31 (citations omitted).
 {¶ 28} Kevin maintains the domestic relations court failed to "critically review and verify the work" of the magistrate in the following respects: grounds for divorce, property division, spousal support, and attorney fees. We disagree.
 {¶ 29} The domestic relations court's Judgment Entry overruling Kevin's objections is twelve pages long. The court's analysis cites to case law (which the magistrate did not) and directly to evidence in the record. The court acknowledged the magistrate erred by allowing Kevin's attorney to withdraw without complying with former Local Rule 5 (now Local Rule 9.02(A)(1)), requiring counsel to certify that the client has been notified of the filing of the motion to withdraw.
 {¶ 30} With respect to the grounds for the divorce, the court partially granted Kevin's objection and rejected that part of the magistrate's decision finding that April was entitled to a divorce on the grounds of gross neglect of duty. As to extreme cruelty, the domestic relations court stated that "transcript pages 134-138, 231-232, 240-243, substantiate how Wife's peace of mind was irretrievably torn apart by Husband's actions. Husband, through his own testimony, corroborated his many, many phone calls to Wife lasting hours and other behaviors which tormented Wife's emotional well-being and peace of mind."
 {¶ 31} With respect to the division of property, the court considered and rejected Kevin's objections after recalculating the award based on the magistrate's findings: "After offsets, Wife received personal property valued at $5,862.00; Husband received personal property valued at $2,098.00, leaving a net difference of $3,764.00. Dividing that in half, Wife owes Husband $1,882.00 as determined by the Magistrate." The court *Page 8 
also rejected Kevin's contention that he never stipulated to dividing the 2002 tax refunds by citing to the transcript where Kevin agreed that April would receive the state refund and that half the federal refund should be applied toward April's "joint marital obligation." The court rejected Kevin's contention that the magistrate's division of personal property was prejudiced by noting that the value of the property was determined by an independent appraiser who testified at trial. The court further noted that both parties had removed certain items of personal property from the marital residence and that Kevin's proposal that personal property should have been divided "based on value first, and subsequent usefulness next" would be cumbersome and impractical.
 {¶ 32} With respect to spousal support issues, the court stated that it concurred in the magistrate's reasoning as to why a temporary support order could not be immediately issued after trial and concurred in the Magistrate's analysis of the statutory factors to calculate the amount of monthly support. The court noted in particular the mental health needs of Anisa and the fact that Kevin's annual income is three times that of April's in a marriage of almost twenty-seven years duration.
 {¶ 33} With respect to attorney fees, the court cited to R.C.3105.73(A), the basis for the award of attorney fees, and concurred in the magistrate's conclusion that Kevin's "position to attribute fault to Wife resulted in contentious litigation from the filing of the Complaint through trial." The court further noted, independent of the magistrate, that Kevin's propounding of 384 interrogatories to April required significant time from April's attorney.
 {¶ 34} In light of the domestic relations court's analysis of the objections, as outlined above, Kevin's contention that the court failed to critically review the magistrate's decision is unfounded. The first assignment of error is without merit. *Page 9 
 {¶ 35} Under the second assignment of error, Kevin argues the domestic relations court's in-gross spousal support award of $13,000, representing a ten month period from October 2004 to July 2005, violates the provisions of Civil Rule 75 and Kevin's right to due process.
 {¶ 36} April requested temporary spousal support in the complaint filed on November 7, 2002, and in a separate Motion for Pendente Lite Spousal Support. On January 31, 2003, the domestic relations court ordered Kevin to pay child support and, in lieu of direct spousal support, to pay $1,340.56 a month directly toward the mortgage on the marital residence. The court's order was based on evidence that Kevin's annual gross income was $88,000 and that April's was $25,000. Kevin filed objections to the court's temporary support order. On May 8, 2003, the magistrate modified the court's January 31, 2003 order by redefining Kevin's obligation to pay toward the house mortgage as the "responsibility * ** for the first [of two] mortgage payments] (whatever that number may be at any given month)."
 {¶ 37} In December 2003, upon Anisa's emancipation, Kevin's obligation to pay child support ceased. In February 2004, April vacated the marital residence.
 {¶ 38} On May 7, 2004, April filed a Motion to Modify the Pendente Lite Support Order. April sought an order of direct spousal support, based on Anisa's emancipation and her vacation of the marital residence. In a supporting affidavit, April stated that the house was not currently listed for sale because Kevin refused to execute the necessary forms. On May 11 and 12, 2004, Kevin filed objections to April's motion to modify.
 {¶ 39} On May 12, 2004, trial began before the magistrate. During the course of the trial, the marital residence was sold. *Page 10 
 {¶ 40} In the magistrate's decision, as noted above, the magistrate awarded April spousal support in the amount of $13,000 for a ten month period, from October 2004, when the residence sold and Kevin's obligation to make mortgage payments ceased, until August 2005, when the magistrate issued his decision.
 {¶ 41} "During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party." R.C. 3105.18(B). "When requested in the complaint, answer, or counterclaim, or by motion served with the pleading, upon satisfactory proof by affidavit duly filed with the clerk of the court, the court or magistrate, without oral hearing and for good cause shown, may grant spousal support pendente lite to either of the parties for the party's sustenance and expenses during the suit * * *." Civ.R. 75(N)(1). "Upon request, in writing, after any temporary spousal support, child support, or order allocating parental rights and responsibilities for the care of children is journalized, the court shall grant the party so requesting an oral hearing within twenty-eight days to modify the temporary order." Civ.R. 75(N)(2).
 {¶ 42} Decisions regarding temporary support pendente lite are within the discretion of the trial court. House v. House, 11th Dist. No. 2005-L-075, 2006-Ohio-2776, at ¶ 17 (citation omitted).
 {¶ 43} Kevin argues the domestic relations court violated Civ.R. 75 by failing to hold a hearing within twenty-eight days of April's motion and his objections. We disagree. Initially, we note that the court's obligation to hold a hearing is dependent upon one of the parties filing a request, in writing, for a hearing. Neither party did so in the present matter. *Page 11 
 {¶ 44} Just as significant, April's motion was filed seven days before the divorce trial commenced. In the course of the trial, extensive testimony was heard on all issues relating to support. Thus, "[t]he divorce trial itself became a Civ.R. 75[(N)] hearing on the amount of reasonable temporary support." Office v. Office (Jan. 17, 1997), 2nd Dist. No. 15298, 1997 Ohio App. LEXIS 148, at *14.
 {¶ 45} Accordingly, there was no violation of Civil Rule 75.
 {¶ 46} Kevin also argues that his due process rights were violated by the court's retroactive imposition of a temporary support order. Kevin relies on the case of Ostmann v. Ostmann, 168 Ohio App.3d 59,2006-Ohio-3617, where the court of appeals stated that "[w]hile * * * a court has the authority to vacate or modify its own orders during the pendency of an action, such a modification should only be prospective in nature." Id. at ¶ 42. In Ostmann, the lower court's final judgment, entered on April 13, 2004, ordered the appellant to pay child support retroactive to November 10, 2003. Id. at ¶ 37. A temporary support order, however, had existed since December 2002. Id. at ¶ 2, ¶ 39. The court of appeals found the retroactive award in the final decree "increased the child support and retroactively applied that increase to the period between the start of the trial and the final judgment entry, during which time the prior temporary order was in effect." Id. at ¶ 43.
 {¶ 47} Ostmann is clearly distinguishable factually. InOstmann, neither party had sought a modification of the support order. By the court's final decree, the appellant was required, retroactively, to pay support for a period of time during which he was already obligated to pay support, in effect, requiring the appellant to pay support twice. In the present case, Kevin's obligation for temporary spousal support ran from October 2004, subsequent to April's motion to modify, until July 2005. The obligation to *Page 12 
pay permanent support commenced August 2005. Thus, the support obligations did not overlap.
 {¶ 48} Moreover, it is well-established that "[a] party seeking modification of a [temporary] support order is entitled to have the modification relate back to the date the motion to modify was filed."Rush v. Oblinger, 8th Dist. No. 86751, 2006-Ohio-2459, at ¶ 12
(citations omitted); Miller v. Miller (Jan. 16, 1987), 6th Dist. No. L-86-011, 1987 Ohio App. LEXIS 5533, at *4 ("it is within the discretion of the court as to whether to make a temporary support order effective as to the date the motion was filed") (citation omitted). This point is also acknowledged in the Ostmann decision: "It is clear that if a motion to modify is filed, the support may be modified retroactive to the date of the filing of the motion." 2006-Ohio-3617, at ¶ 45 n. 11 (citation omitted).
 {¶ 49} The second assignment of error is without merit.
 {¶ 50} Under the third assignment of error, Kevin challenges the domestic relations court's award of spousal support on the grounds that the evidence presented at trial conclusively demonstrated April's cohabitation with her lover, Valentino.
 {¶ 51} The issue of whether a recipient of spousal support has "legally cohabitated" so as to terminate such support is reviewed under a manifest weight of the evidence standard. Clark v. Clark,168 Ohio App.3d 547, 2006-Ohio-4820, at ¶ 14 (citation omitted). Under this standard, "[judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus.
 {¶ 52} The essential elements of cohabitation, as adopted by this court, are "(1) an actual living together; (2) of a sustained duration; and (3) with shared living expenses *Page 13 
with respect to financing and day-to-day incidental expenses."Harrison v. Harrison, 11th Dist. No. 2005-A-0029, 2006-Ohio-4948, at ¶ 13, citing Moell v. Moell (1994), 98 Ohio App.3d 748, 752. "[C]ohabitation suggests not only a relationship between two parties, sexual or otherwise, but also implies that some sort of monetary support exists between the former spouse and the paramour so as to constitute the `functional equivalent of marriage.'" Clark, 2006-Ohio-4820, at ¶ 17 (citation omitted).
 {¶ 53} The evidence in the present case is that April and Valentino began their relationship in the year 2000. After August 2002, April began spending the night at Valentino's residence. In 2003, April and Valentino took vacations to Maine and Florida together. After vacating the marital residence, April primarily stayed with friends of hers, the Davis family, and occasionally with Valentino.
 {¶ 54} The magistrate deemed Kevin's supposition that April and Valentino were cohabitating "plausible." However, the magistrate concluded, based on "legal research, that the case law does not support [Kevin's] position that [April] is not entitled to spousal support based upon this supposition. There was not sufficient evidence presented to indicate the requisite financial nexus between being at Mr. Valentino's home and the financial co-mingling required under the Law. [April's] expenses and [Kevin's] expenses as evidenced by the pleadings and their testimony are reasonable and non-remarkable."
 {¶ 55} Kevin maintains the evidence, as described above, establishes that Valentino was "`providing some sort of monetary support to [April]' by providing her with provisions for shelter/utilities." The "monetary support" in the form of shelter/utilities April enjoyed by occasionally spending the night with Valentino does not meet the legal standard of financial co-mingling so as to constitute the functional equivalent of marriage based on the facts in the record. Notably lacking from the record is any *Page 14 
evidence of financial interdependence between April and Valentino. "Without a showing of support, merely living together is insufficient to permit a termination of alimony." Thomas v. Thomas (1991),76 Ohio App.3d 482, 485.
 {¶ 56} The magistrate's conclusion is supported by competent, credible evidence. The third assignment of error is without merit.
 {¶ 57} In the fourth and final assignment of error, Kevin argues the domestic relations court erred by ordering him to pay $9,000 toward April's attorney fees.
 {¶ 58} "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A).
 {¶ 59} "It is well-established that an award of attorney fees is within the sound discretion of the trial court." Rand v. Rand (1985), 18 Ohio St.3d 356, 359 (citation omitted).
 {¶ 60} In the present case, the magistrate awarded April attorney fees in the amount of $9,000, based on her attorney's rate of $195 per hour and a total of 56.65 hours expended prior to the commencement of trial. The magistrate noted that April should be "responsible for a significant portion of her own fees," and, therefore, would not supplement the award for the additional hours expended at hearing.
 {¶ 61} The magistrate found the award to be "appropriate, reasonable, and equitable," for the following reasons. The magistrate noted that "discovery matters were *Page 15 
at issue throughout the course of the case." In particular, April's counsel had to go "the extra length to respond to requests for admission that were much more burdensome than provided for in the Civil Rules." Cf. Civ.R. 33(A) ("[a] party shall not propound more than forty interrogatories to any other party without leave of court"). As the domestic relations court noted, Kevin propounded a total of 384 interrogatories to April. In an earlier decision resolving discovery issues, the magistrate observed that "many of the questions are not designed to provide any discoverable evidence nor are they to `resolve potentially disputed issues, and to thus expedite the trial'." In addition to discovery issues, the magistrate referred to Kevin's "fault oriented position" and greater ability to pay attorney fees and ability "to obtain appropriate credit * * * to assist [in] payment."
 {¶ 62} Kevin argues that the record does not support the conclusion that he is better able to obtain credit and that consideration of his ability to obtain credit is improper. We disagree. The statute expressly provides that the court may consider a party's "assets and income * * * and any other relevant factors the court deems appropriate." Moreover, the record demonstrates that Kevin earns $87,000 annually, compared with April's salary of approximately $27,000 a year, and that Kevin has specialized education and training in nuclear technology.
 {¶ 63} Kevin argues that the magistrate's referral to his "fault oriented position" essentially penalizes him for seeking a divorce on fault grounds. Again, we disagree. The statute allows the court to consider a party's conduct. In the present case, the manner in which Kevin pursued a divorce based on fault, in the court's words, "resulted in contentious litigation from the filing of the Complaint through trial." This conclusion is supported by the magistrate's remarks regarding Kevin's interrogatories, quoted above, *Page 16 
and by the transcript of the proceedings of the four-day trial, in which the acrimonious nature of the proceedings was evident. Neither the court nor the magistrate is punishing Kevin for his conduct, but to the extent that his conduct unnecessarily prolonged the proceedings, his conduct may be considered in determining the equity of awarding attorney fees. Cf. Rendina v. Rendina, 11th Dist. No. 2003-L-193, 2005-Ohio-4772, at ¶ 75 (approving an award of attorney fees where a party's efforts "to block the divorce proceedings * * * increased appellee's attorney fees").
 {¶ 64} The domestic relations court's award of attorney fees was within its discretion. The fourth assignment of error is without merit.
 {¶ 65} For the forgoing reasons, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, terminating Kevin and April's marriage and dividing the marital estate, is affirmed.
CYNTHIA WESTCOTT RICE, P.J.,
COLLEEN MARY O'TOOLE, J.,
 concur. *Page 1