[Cite as *Anderson-Fye v. Mullinax-Fye*, 2024-Ohio-5909.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

EILEEN PATRICIA ANDERSON-FYE, :

    Plaintiff-Appellant/
    Cross-Appellee, :

                         No. 113313

    v. :

CHRISTOPHER MULLINAX-FYE, :

    Defendant-Appellee/
    Cross-Appellant. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 19, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-19-375430

---

### *Appearances:*

Stafford Law Co., L.P.A., Nicole A. Cruz and Kelley R. Tauring, *for appellant/cross-appellee.*

Rosenthal│Lane LLC and Scott S. Rosenthal, *for appellee/cross-appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Former spouses, plaintiff-appellant/cross-appellee, Eileen Patricia Anderson-Fye ("Anderson"), and defendant-appellee/cross-appellant, Christopher

Mullinax-Fye ("Mullinax"), both appeal from the trial court's judgment entry overruling their objections to the magistrate's decision and from the final decree issued by the domestic relations court granting Anderson a divorce from Mullinax. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} The parties were married on May 12, 2001, and three children were born as issue of the marriage.

{¶ 3} On February 13, 2019, Anderson filed a complaint for divorce and a motion for temporary support. The same day, pursuant to Cuyahoga C.P., Dom.Rel., Loc.R. 24, the court issued mutual restraining orders enjoining Anderson and Mullinax from, among other things, voluntarily liquidating any retirement plans or withdrawing funds from any bank accounts. Mullinax filed an answer and counterclaim and, on April 1, 2019, filed a counter-affidavit to Anderson's motion for temporary support.

{¶ 4} The court appointed a guardian ad litem ("GAL") for the parties' three minor children.[1] On July 11, 2019, the parties filed an agreed judgment entry authorizing the sale of the marital residence located in Solon, Ohio. Following the sale of the marital residence, the parties agreed to a partial distribution of the sale proceeds for the payment of various debts, including payment of the JP Morgan Chase Credit Card ($48,817.91); TLC Landscaping ($10,474.75); the water

---

[1] One child reached the age of majority while the divorce case was pending.

department ($624.31); City of Solon Sewer ($1,750); Illuminating Company ($643.08); Dominion Gas ($38.89) and Mary Ellen Herschberger ($520). On October 7, 2019, additional funds were distributed from the sale proceeds for the payment of the American Express account ($25,134.40) and Citi Mastercard ($14,707.52).

{¶ 5} On October 25, 2019, the parties filed an agreed judgment entry for temporary support ("October 2019 agreed judgment entry") whereby Anderson was ordered to pay the costs and expenses associated with her residence, her personal expenses and the Nordstrom credit card. Mullinax was ordered to pay his personal expenses and the expenses associated with his residence. Both parties were ordered to pay 50 percent of the monthly minimum payments for the Key Bank overdraft protection account, the Discover account, the USAA account, the Chase Visa and the Sofi loan account. Further, both parties were ordered to pay 50 percent of the child-related expenses including, but not limited to, extracurricular activities, school fees and supplies, agreed-upon camps and uncovered medical expenses.

{¶ 6} On January 3, 2020, Anderson filed a motion for an in camera interview of the minor children which Mullinax opposed.

{¶ 7} In a January 10, 2020 order, the court ordered each party to submit to an alcohol assessment and set forth a temporary, four-week parenting rotation.

{¶ 8} On March 5, 2020, Anderson filed a motion to show cause in which she alleged that Mullinax failed to abide by the terms of the October 2019 agreed

judgment entry allocating the parties' respective financial obligations. On May 1, 2020, Mullinax filed a motion to show cause in which he alleged that Anderson failed to abide by the terms of the January 10, 2020 temporary order by dropping the children off late and, in several instances, failing to allow Mullinax to engage in parenting time with the oldest child.

{¶ 9} On May 8, 2020, the court issued a temporary order ordering Mullinax to participate in reunification counseling with the oldest child which set forth a new schedule for parenting time between Mullinax and that child.

{¶ 10} On June 19, 2020, Anderson filed a motion for a partial release of the temporary restraining order in place, arguing that such release would allow Anderson to access retirement funds in order to secure her interest in real property. Specifically, the motion stated:

> [Anderson] purchased a home by way of seller financing on or about July 2019. [Anderson] was unable to obtain traditional financing at the time of the initial purchase due to being unable to obtain an executed release of dower from [Mullinax]. The seller financing agreement terminates on July 27, 2020 at which time [Anderson] must have traditional financing or risk losing possession of the real property to her and the minor children's detriment.

{¶ 11} Mullinax opposed this motion.

{¶ 12} Prior to the scheduled trial date, the GAL filed a motion to modify the temporary parenting time order, noting that the parties' arrangement had become untenable and requesting the court adopt a new parenting time order. On January 12, 2021, the court granted the GAL's motion and implemented a new parenting time order, pursuant to which Anderson would have the children from

Sunday to Wednesday, Mullinax would have the children from Wednesday to Friday and the parties would alternate weekend parenting time.

{¶ 13} Mullinax filed a motion for an independent psychological and custody evaluation. The court granted this motion and appointed Dr. Mark Lovinger ("Dr. Lovinger") to perform the evaluation. Anderson filed a motion to reconsider that order, noting that the trial court granted Mullinax's motion before Anderson filed a response.

{¶ 14} On February 17, 2021, Anderson filed a motion to show cause in which she again alleged that Mullinax failed to abide by the terms of the October 2019 agreed judgment entry, asserting that Mullinax had failed to pay 50 percent of the medical, extracurricular and other expenses for the children.

{¶ 15} On April 1, 2021, Mullinax filed a motion to compel Anderson to participate in a psychological evaluation which the trial court granted. Anderson filed a motion to reconsider that order. As in her previously filed motion to reconsider, Anderson argued that because the court granted Mullinax's motion several days after it was filed, she was deprived of the right to respond, thus infringing upon her due process rights.

{¶ 16} Mullinax filed a motion to show cause related to the court's order compelling Anderson's participation in the custodial evaluation and days later, Mullinax filed a "preliminary motion to adopt the proposed shared parenting plan." Mullinax explained that the "preliminary" qualification was based on Anderson's failure to comply with the court's January 13, 2021 order appointing Dr. Lovinger

as the evaluator and with the subsequent order compelling her to submit to the evaluation.

{¶ 17} Anderson filed briefs in opposition to Mullinax's motion to show cause as well as his motion to adopt the proposed shared parenting plan.

{¶ 18} On June 15, 2021, Anderson filed a motion requesting the court issue an order to sell the parties' 2016 Mercedes-Benz SUV because she could not afford the monthly payments.

{¶ 19} On July 2, 2021, Mullinax filed a motion to show cause related to the October 2019 agreed judgment entry as well as the February 13, 2019 mutual restraining order; specifically, the affidavit attached to the motion averred that Anderson had failed to make debt payments as required by the October 2019 agreed judgment entry.

{¶ 20} On July 29, 2021, Mullinax filed a trial brief in which he stated that he was pursuing sole custody of the parties' minor children. Anderson filed a trial brief in which she requested that she be designated as the residential parent and legal custodian of the parties' minor children.

{¶ 21} On August 9, 2021, Mullinax filed an emergency motion for an order requiring Anderson to reinstate his health insurance coverage. The same day, the court issued an order granting that motion and issued an order for Anderson to "immediately contact her health insurance provider to promptly add Mullinax back on to her health insurance policy, as the October 25, 2019 Agreed Judgment Entry requires." On August 16, 2021, Anderson filed a motion to vacate the court's August

11, 2021 judgment entry stating that she has provided health insurance coverage for Mullinax throughout the pendency of the action and which is currently in place.

{¶ 22} Anderson filed a motion to disqualify Dr. Lovinger as an expert, asserting that a conflict of interest existed because both she and Dr. Lovinger are employed at the Case Western Reserve University School of Medicine. Mullinax opposed that motion.

{¶ 23} On August 30, 2021, Anderson filed a motion to modify the temporary support obligations set forth in the October 2019 agreed judgment entry. In her affidavit attached to this motion she averred that there had been a substantial change in circumstances necessitating a modification to the order, including a change in the parties' income and a change in the children's expenses. The affidavit did not elaborate further on the change in circumstances.

{¶ 24} On September 21, 2021, Anderson filed a renewed motion for an in camera interview of the minor children which the court granted as well as a motion for a hearing pursuant to Civ.R. 75(N).

{¶ 25} On November 22, 2021, Mullinax filed a motion to show cause related to nonpayment of support and Anderson's refusal to comply with a psychological evaluation which Anderson opposed.

{¶ 26} On December 21, 2021, Mullinax filed yet another motion to show cause related to claimed denials of parenting time and Anderson's continued refusal to participate in a psychological evaluation. On December 30, 2021, the magistrate issued an order stating that the parties had reached an agreement to

submit briefs and have the court rule on the pending motions on the remaining issues in lieu of a trial. On December 31, 2021, Anderson filed a motion for sanctions and a brief in opposition to Mullinax's motion to show cause.

{¶ 27} Meanwhile, on December 23, 2021, the trial court issued an amended trial order setting forth various procedures for trial, including:

> Direct examination of witnesses shall be limited to 60 minutes per witness and cross-examination of witnesses shall be limited to 30 minutes per witness. Evid.R. 611; *Regalbuto v. Regalbuto*, 8th Dist. Cuyahoga No. 99604, 2013-Ohio-5031; *Snyder v. Grant*, 8th Dist. Cuyahoga No. 103796, 2016-Ohio-5247, ¶ 29.

The amended trial order also instructed the parties to submit trial briefs including income tax returns with supporting schedules; valuation of all pension plans or retirement savings; a list of all stocks, bonds, or other investment vehicles; any reports from private mental health professionals; a list of predecree motions filed and not adjudicated and a statement of any disputed issue of law. The amended trial order further specified that any separate property claims must be supported by documentary evidence.

{¶ 28} The parties filed their respective briefs on pending motions. On January 18, 2022, Mullinax filed a notice that he served his expert's report on Anderson on January 17, 2022.

{¶ 29} Trial was continued numerous times at the request of both parties. Trial was initially set for one day, but the trial in this case ultimately took place on three dates: February 7, 2022; July 28, 2022 and January 17, 2023.

**{¶ 30}** On the first trial date, February 7, 2022, Anderson called Mullinax as a witness, under cross-examination. Mullinax testified that he had an undergraduate degree from Florida State University, went through the Navy Nuclear Power Program and obtained a master's in business administration ("MBA") from Harvard University. He further testified that he served in the United States Navy for nine years and was honorably discharged as a lieutenant and that, at the time of trial, he earned $2,500 per month. According to Mullinax, prior to this position, he was self-employed at a startup and prior to that, he was employed at Swagelok, making approximately $150,000 per year for over five years.

**{¶ 31}** Mullinax also testified as to his various retirement accounts. He testified that he inherited stock from his grandfather, his grandmother and his mother and he also inherited IRA's from his mother and his grandfather. When asked how he was supporting himself and covering his monthly expenses, which he purported were between $5,000 and $7,000, he testified that he was supporting himself through his salary and through liquidation of an inheritance and he testified that he was not aware that liquidating these funds may have violated the mutual restraining orders in place in the divorce proceedings. At the conclusion of Mullinax's cross-examination, Anderson's counsel stated:

> Just for the record, so you know I've run out of my time. I think I'm at 41 minutes of time so I do appreciate the extra time. Of course for the record I have a lot more cross-examination, but nevertheless I'm done with this witness to keep within Trial Court Guidelines.

{¶ 32} With respect to parenting, Mullinax testified that he believed it was in the children's best interest for them to be with him and pointed to Anderson's drinking, her refusal to participate in a psychological evaluation and her making false accusations against him as reasons for this opinion. Mullinax also testified that he believed his more structured parenting style was beneficial for the children and that because Anderson had a higher income, he believed that he should not pay child and spousal support.

{¶ 33} Anderson also testified on the first day of trial. She testified that she has an undergraduate degree from Brown University and both a master's degree and a doctorate in human development and psychology from Harvard University and that she has worked at Case Western Reserve University since 2007, is a tenured professor and the founding director of a specialized program in the Case Western Reserve University School of Medicine. With respect to Dr. Lovinger, Anderson testified that both she and Dr. Lovinger have appointments in the same department within the school of medicine.

{¶ 34} According to Anderson, Mullinax was unemployed for extended periods of time and, despite having significant free time, he would not do any household labor or childcare. She testified that she believed that Mullinax was deliberately not working during the pendency of this case and that she has always been the primary caretaker of the children. She further testified that the children, particularly the two older, "have had a very, very hard time when they have to spend time at their father's house."

**{¶ 35}** Anderson also testified that, at least once during the marriage, she liquidated her retirement funds in order to pay for household expenses and shared debt. She also testified that she has financially suffered throughout the divorce proceedings because Mullinax failed to pay for his share of the children's expenses and, because the court had failed to rule on a motion permitting her to sell a vehicle for which she could no longer afford the payments, the car had been repossessed and, at the time of trial, she was driving a vehicle that she rented from her father.

**{¶ 36}** With respect to her housing situation, Anderson testified that while she did refer to her "purchase" of a home in a June 2020 motion she filed with the court, she did not in fact own her home but was living in a home located on Andre Lane in Solon, Ohio ("the Andre Lane residence") owned by Carol and Patrick Creek and that she had a rental agreement with them, which also provided that she had two years in which to obtain financing to purchase the home.

**{¶ 37}** Anderson also called the GAL as a witness on the first day of trial. The GAL testified that Anderson was the children's primary caretaker and was closely bonded with the children. The GAL testified that the children generally blamed Mullinax for many of the difficulties they endured throughout the divorce proceedings, including having to sell the family home and move.

**{¶ 38}** The GAL testified that the older children both experienced suicidal ideations, and as to one of them, this stemmed from interactions with Mullinax. With respect to parenting time, the GAL testified that all three children are closer

with Anderson and that both of the older children have consistently expressed their desire to spend more time with her.

{¶ 39} Mullinax filed a subpoena seeking documentation relating to any lease or other agreement into which Anderson entered with Patrick Creek and/or Carol Creek, as well as any and all contracts or agreements concerning Anderson's residence. Anderson filed a motion to quash this subpoena, arguing that it was improperly seeking new records and documentation after the court's discovery deadline. The trial court denied Anderson's motion to quash.

{¶ 40} On March 24, 2022, the court denied Anderson's motions to show cause filed on March 6, 2020, and February 17, 2021; Anderson's motions to modify temporary support; Anderson's motion for a hearing pursuant to Civ.R. 75(N); and Mullinax's motion to show cause for nonpayment of support.

{¶ 41} On April 22, 2022, Mullinax filed an emergency motion for immediate possession of the parties' minor children, a motion to show cause related to Anderson's refusal to submit to a psychological evaluation and another motion to show cause related to Anderson's alleged denial of Mullinax's parenting time.

{¶ 42} On July 11, 2022, the GAL filed a motion to withdraw as GAL as she had accepted a position as a magistrate. The court granted that motion.

{¶ 43} Trial recommenced on July 28, 2022. Mullinax called Sean Saari ("Saari") to testify as to the tracing of his claimed separate property. Saari testified that he was a Certified Public Accountant ("CPA") and a "Valuation and Financial Expert" with experience in forensic financial analysis. Anderson's counsel objected

to any classification of Saari as an expert witness and also requested the opportunity to conduct a voir dire examination of Saari. The court overruled the objection and permitted Saari to testify as an expert witness.

{¶ 44} The record is ambiguous as to whether a voir dire of Saari took place. While Anderson's counsel objected numerous times to being unable to voir dire Saari, the transcript reflects that part of Saari's cross-examination was, substantively, voir dire, in which Saari was questioned at length about his credentials and his experience as an expert on financial tracing in other cases. The transcript contains a section labeled "Voir Dire Examination of Sean Saari" immediately after the court instructed counsel to begin cross-examination. The transcript also contains multiple exchanges between the court and Anderson's counsel wherein they debate whether counsel is engaged in voir dire or cross-examination.

{¶ 45} Saari testified that he obtained and reviewed a number of Mullinax's accounts, analyzed those accounts and created spreadsheets documenting transactions within those accounts over the period of time that Mullinax held the accounts. Specifically, Saari analyzed a T. Rowe Price account ending in 9802-7, a Vanguard accounts ending in 5031, a Vanguard account ending in 7373, a Vanguard account ending in 8985 and a Vanguard account ending in 2105.

{¶ 46} Saari testified that Mullinax held the T. Rowe Price account prior to the marriage, and based on his analysis, the entirety of the balance in that account could be traced to property that Mullinax held prior to the date of the marriage.

With respect to Vanguard account 5031, Saari testified that, prior to the date of the marriage, this account had a balance of $61,559.90. Saari testified that this account had activity over the course of the marriage, including multiple rollovers and conversions of other retirement funds. Ultimately, based on the nature of shares in the account that existed prior to the marriage, Saari determined that 48.1 percent of the account balance, or approximately $240,000, could be traced to premarital assets. With respect to Vanguard account 7373, Saari testified that this account was an IRA account that Mullinax had inherited from his grandfather prior to the date of the marriage and no deposits were made into the account during the course of the marriage. With respect to Vanguard account 8985, Saari testified that this was an IRA account which Mullinax inherited from his mother prior to the date of the marriage and no deposits were made into the account during the marriage. Finally, with respect to Vanguard account 2105, Saari testified that, based on his review of the account and various estate documents, this account contained stock shares that Mullinax had inherited from his mother and grandfather prior to the date of the marriage. Specifically, Saari testified that 10,000 shares were inherited from Mullinax's grandfather, 838 shares were inherited from his mother and the source of the remaining 10,034 shares could not be determined. The inherited shares constituted 51.9 percent of the account balance.

{¶ 47} Saari also testified that, while withdrawals from the aforementioned accounts were included in his analysis, he did not summarize the withdrawal totals because they were not relevant for tracing purposes to determine what was marital

property "because there were not transfers between accounts, so the withdrawals were taken out and used elsewhere."

{¶ 48} At the conclusion of the second day of trial, the court permitted re-cross-examination of Mullinax. The court stated that "we're going to do that for 15 minutes which is generous under the circumstances."

{¶ 49} Mullinax testified that he paid Saari's $20,000 fee with a combination of his salary and from selling stock that he had inherited, that he removed funds from a restrained account but he believed that he had permission to do so and that the balance of his accounts at the time of trial was approximately $900,000.

{¶ 50} On December 16, 2022, Mullinax filed a motion to show cause related to Anderson's denial of his parenting time and a motion for immediate possession of the minor children alleging that Anderson had failed to inform him of one of their children's suicidal ideation and hospitalization.[2] Anderson filed briefs in opposition.

{¶ 51} On January 10, 2023, the magistrate issued a decision that made numerous findings of fact and conclusions of law. In particular, the magistrate noted that Anderson alleged she was owed $6,740.77 in unpaid expenses and had accrued $10,119.82 in expenses due to Mullinax's failure to comply with his temporary support obligations. For his part, Mullinax alleged that he had made a

---

[2] This court notes that, at a minimum, Mullinax was aware of this because it was testified to by Anderson, Mullinax and the GAL at trial.

variety of monthly payments to Anderson and he thereby satisfied his obligations under the October 2019 agreed judgment entry. The magistrate found, by a preponderance of the evidence, that both parties substantially complied with the October 2019 agreed judgment entry and, therefore, the pending motions to show cause were denied.

{¶ 52} The third and final day of trial was held on January 17, 2023. The GAL was set to be cross-examined by Mullinax's counsel. At the outset of the hearing, Anderson's counsel objected to the former GAL's testimony, on the grounds that she had not participated in the case in almost a year, had formally withdrawn from the case in July 2022 and was currently employed as a magistrate in a neighboring county. The court overruled the objections and permitted counsel to cross-examine the former GAL who appeared via videoconference.

{¶ 53} The former GAL testified to the parties' different parenting styles as well as their respective relationships with the children. She also testified that Mullinax repeatedly and consistently told her that Anderson had an alcohol abuse problem but that her investigation, which included gathering records from the parties' former marital counselor and speaking with several witnesses, did not support those allegations and, ultimately, she was unable to verify that there was any alcohol abuse concern.

{¶ 54} The former GAL testified that all three children were very strongly bonded to Anderson as well as to each other and that the children had a strained relationship with Mullinax. The former GAL's recommendation was for shared

parenting because, despite their communication issues related to shared parenting throughout the pendency of the case, she "felt that they could manage it with assistance," and moreover, felt that if one parent were granted sole custody, "it seemed like that would further alienate the other parent."

**The Magistrate's Decision**

{¶ 55} On July 24, 2023, the magistrate issued a decision. The magistrate's decision found that the duration of the marriage was May 12, 2001 to February 7, 2022, the first day of trial. The magistrate's decision found that both parties' testimony was "generally credible and reliable" and, therefore, was accepted by the court.

{¶ 56} With respect to the division of property, the magistrate's decision made the following findings of fact and conclusions of law, in relevant part:

> At trial, [Mullinax] called Sean Saari, to testify as an expert in tracing in an attempt to establish a claim of separate property for several financial accounts. However, at trial Mr. Saari testified that he was missing at least five (5) years of records and did not have the documentation necessary to conduct a tracing analysis. Rather, Mr. Saari relied upon the representations of [Mullinax]. Therefore, the Court finds that [Mullinax] failed to satisfy his burden of proof regarding traceability in order to single out certain assets as separate property. However, [Mullinax] was able to satisfy his burden to show that certain retirement accounts are his separate property by way of an inheritance.

The magistrate's decision awarded the proceeds of the sale of the marital home to be split equally between the parties and provided that Anderson "shall retain her interest in [the Andre Lane residence]."

{¶ 57} With respect to retirement accounts, the magistrate made the following findings of fact and conclusions of law, in relevant part:

[Anderson] possesses the following retirement accounts, assets, or benefits that are/is marital property:

Case Western Reserve 403(b) Vanguard Retirement Account ending x0272 with an [approximate] value of $316,631.24.

[Mullinax] possesses the following retirement accounts, assets, or benefits that are marital property:

Vanguard Primecap Roth IRA account ending x5031 with an approximate value of $494,683.60.

Vanguard Roth IRA (excluding Primecap) ending x5031 with an approximate value of $153,811.32.

Vanguard Traditional IRA Account ending 8964 with an approximate value of $122,749.91

Vanguard Mutual Fund Account ending x6092 with an approximate value of $63.18

Northrop Grumman Pension Plan with an approximate value of $63,520.72

T-Rowe Price Account ending x9802-7 with an approximate value of $92,958.45

Defendant possesses the following retirement accounts that are his separate property:

Vanguard Truist Stock account ending x2105 with an approximate value of $2,203.96

Vanguard IRA Account ending x7373 with an approximate value of $128,850.90

Vanguard IRA Account ending x8985 with an approximate value of $119,005.99

[Anderson] shall receive the Case Western Reserve 403(b) Vanguard Retirement Account free and clear of any claim of [Mullinax].

[Anderson] shall further receive the sum of $276,993.97 from [Mullinax's] Vanguard Primecap Roth IRA account ending x5031 as and for her total interest in [Mullinax's] retirement accounts.

[Mullinax] shall receive the Vanguard Roth IRA (excluding Primecap) ending x5031; the Vanguard Traditional IRA ending x8964; the Vanguard Mutual Fund ending x6902; the Northrop Grumman Pension Plan; and the T-Rowe Price Account ending x9802-7 free and clear of any claim of [Anderson]

[Mullinax] shall receive the retirement accounts in his name that are his separate property, free and clear of any claim of [Anderson.]

{¶ 58} The magistrate ordered that the parties be equally responsible for the marital debt. With respect to spousal support, the magistrate's decision cited the statutory factors in R.C. 3105.18(C) and found that an award of spousal support was neither reasonable nor appropriate.

{¶ 59} With respect to parental rights and responsibilities, the magistrate's decision found that shared parenting was not in the best interest of the minor children. The magistrate's decision allocated parental rights and responsibilities to Anderson, ordered that she be designated the residential parent and legal custodian of the minor children and ordered that Mullinax shall have parenting time in accordance with the court's Standard Parenting Time Schedule.

{¶ 60} With respect to child support, the magistrate's decision made the following findings of fact and conclusions of law, in relevant part:

[Anderson] is an Associate Professor of Anthropology at Case Western University. [Anderson's] annual gross income is $139,267 annually for child support purposes.

[Mullinax] received a Master of Business Administration from Harvard Business School and has historically earned in excess of $175,000 annually. The evidence at trial established that throughout the

marriage [Mullinax] significantly outearned [Anderson]. Shortly before [Anderson] filed to end the marriage [Mullinax] voluntarily left his employment and used significant marital funds to invest in start-up opportunities and a franchise, none of which were successful.

During the pendency of this case [Mullinax] had been working for a start-up company earning approximately $59,900. However, [Mullinax] testified at trial that the start-up had been unable to pay him and that he was laid off in 2021. [Mullinax] is currently still unemployed.

The Court finds that pursuant to ORC 3119.01 [Mullinax] is currently unemployed and has been underemployed during the pendency of this case. Therefore, the Court finds that [Mullinax's] income shall be imputed at $175,000 annually for child support purposes.

[Mullinax] shall be designated the child support obligor (pays support) and [Anderson] shall be designated the child support oblige [sic] (receives support).

[Mullinax] shall pay child support in the amount of $1,559.87 per month, plus cash medical support in the amount of $37.22 per month (total support obligation per month), pursuant to the attached child support worksheet.

[Anderson] shall be designated medical insurance obligor and shall continue to provide medical coverage for the minor children.

{¶ 61} The magistrate's decision provided that the parties were entitled to claim the minor children as dependents in alternating years. With respect to attorney fees, the magistrate's decision provided that each party pay their respective attorney fees. The magistrate's decision found that spousal support was neither reasonable nor appropriate. With respect to temporary support, the magistrate's decision found that due to the October 2019 agreed judgment entry, in which no child support would be exchanged and the parties agreed to split the children's expenses equally, there were no arrearages due.

{¶ 62} Both parties filed objections to the magistrate's decision and the trial court issued a judgment entry in which it sustained, in part, and overruled, in part, the parties' objections as described below.

{¶ 63} Anderson's first objection to the magistrate's decision was that the award of her "interest in real property located at 6690 Andrew Lane, Solon, Ohio 44139" was unsupported by the evidence and should be corrected. Specifically, she argued that the evidence showed that she did not ever purchase this property and, therefore, had no interest. The trial court sustained this objection.

{¶ 64} Anderson's second objection to the magistrate's decision was that the award of Vanguard account 2105, Vanguard account 7373 and Vanguard account 8985 to Mullinax was an abuse of discretion. The trial court found that, with respect to Vanguard account 2105, Mullinax was unable to show, by a preponderance of the evidence, that 10,034 shares, or approximately 49.1 percent of the account, was his separate property. Therefore, the trial court partially sustained Anderson's objection and found that Anderson was entitled to 50 percent of the value of 10,034 shares in Vanguard account 2105. The court found that, with respect to Vanguard accounts 7373 and 8985, Mullinax was able to show through Saari's expert report that the accounts were inherited from relatives and therefore, were his separate property.

{¶ 65} Anderson further objected, arguing that the order to alternate the child tax credit, the failure to retroactively modify her temporary support award, the failure to award her attorney fees, the enforcement of arbitrary time restrictions

at trial and the failure to award to her a distributive award all constituted abuse of discretion. The court overruled these objections.

{¶ 66} Mullinax's first objection to the magistrate's decision was that the magistrate erred in setting unreasonable time limits at trial but the court overruled this objection. His second objection to the magistrate's decision was that the magistrate erred in making Anderson the residential parent and legal custodian of the children and permitting him only standard parenting time. The court overruled this objection.

{¶ 67} Mullinax's third objection to the magistrate's decision was that the magistrate erred in failing to award him all of his separate property: specifically, his interests in a Key Bank account, his Vanguard account 5031 and his T-Rowe Price account ending in 9802-7. With respect to the Key Bank account, the court reviewed Mullinax's bank records and found that he had a Key Bank account and a review of the transactions in that account supported his assertion that it was his separate property. Therefore, the court sustained Mullinax's objection as to the Key Bank account as well as the T. Rowe Price account.

{¶ 68} With respect to Vanguard account 5031, the court found:

> Saari did a tracing analysis for [Mullinax's] Vanguard IRA account ending x5031. Mr. Saari determined that the account was established in 1998, before the marriage, and consisted of only shares from a Vanguard PRIMECAP Fund ("PRIMECAP"). Mr. Saari found that as of the date of the marriage the account had a balance of $61,599.90. During the marriage, [Mullinax] rolled over other retirement plans into the account and purchased additional PRIMECAP shares. Mr. Saari concluded that 48.1 percent of the PRIMECAP balance is traceable to [C.M.F.'s] pre-marriage property.

Upon review, the Court agrees with Mr. Saari's analysis. [Mullinax] is entitled to 48.1 percent of the PRIMECAP account valued at approximately $494,683.60 as his separate property. The remaining 51.9 percent of the account is marital and [Anderson] and [Mullinax] are each entitled to 50 percent of the marital portion. [Mullinax's] objection as to Vanguard IRA ending x5031 is sustained.

{¶ 69} Mullinax's fourth objection to the magistrate's decision was that the magistrate erred in denying his multiple motions to show cause. Mullinax's fifth objection to the magistrate's decision was that the magistrate erred in its allocation of marital debts and liabilities. Mullinax's sixth objection to the magistrate's decision was that the magistrate erred in the determination of the parties' incomes. Mullinax's seventh objection to the magistrate's decision was that the magistrate erred in the calculation of child support and allocation of the children's expenses. Mullinax's eighth objection to the magistrate's decision was that the magistrate erred in failing to award him spousal support. Mullinax's ninth objection to the magistrate's decision is that the magistrate erred in failing to equitably divide the parties' real property. Mullinax's tenth objection to the magistrate's decision was that the magistrate erred in failing to award him attorney fees. Mullinax's eleventh objection to the magistrate's decision was that the magistrate erred in finding that Anderson's testimony was credible. The court overruled these objections. Mullinax's twelfth objection to the magistrate's decision was that the magistrate erred in the totality of the division of assets, debts and liabilities. The court sustained this objection, in part, as described more fully above.

{¶ 70} On November 2, 2023, the court granted the parties a divorce and issued a divorce decree, adopting the magistrate's July 24, 2023 decision, but for that described above.

{¶ 71} Anderson appealed, presenting six assignments of error for our review:

I. The trial court erred as a matter of law and abused its discretion in admitting [Mullinax's] expert report of Sean Saari for purposes of identifying and tracing separate property claims.

II. The trial court erred as a matter of law and abused its discretion in dividing the marital property, awarding Mullinax separate property interests that were not properly traced, and failing to award Anderson a distributive award.

III. The trial court erred as a matter of law and abused its discretion by ordering the parties to alternate the child tax credit.

IV. The trial court erred as a matter of law and abused its discretion by failing to retroactively modify Mullinax's temporary support obligations.

V. The trial court erred as a matter of law and abused its discretion by imposing arbitrary time limitations upon Anderson's presentation of evidence and testimony at trial.

VI. The trial court erred as a matter of law and abused its discretion by failing to award Anderson her attorney fees and litigation expenses.

{¶ 72} Mullinax cross-appealed, presenting four cross-assignments of error for our review:

I. The trial court erred and abused its discretion in ordering that Anderson be granted sole custody of the minor children.

II. The trial court erred and abused its discretion in failing to find Anderson in contempt of court for her blatant violations of multiple court orders.

III. The trial court erred and abused its discretion in its allocation of marital debts and liabilities.

IV. The trial court erred and abused its discretion in its determination of the parties' incomes.

{¶ 73} Anderson filed a motion to stay the trial court's order for emergency possession of the minor children to Mullinax; a motion which Mullinax opposed. This court denied Anderson's motion to stay, stating:

> The order is an interim order. Temporary or interim orders in child custody and related proceedings remain subject to modification pending a final ruling; therefore, they do not constitute final appealable orders under R.C. 2505.02(B). *See Overmyer v. Halm*, 6th Dist. Sandusky App. No. S-08-021, 2009-Ohio-387, at ¶ 13 (finding the trial court's order temporarily modifying father's visitation rights is not a final appealable order of modification of visitation, but instead an interim order). Additionally, the post-decree order is outside the scope of this appeal, which concerns the September 23, 2023 divorce decree. Notice issued.

**Legal Analysis**

**I. Saari's Expert Report**

{¶ 74} In her first assignment of error, Anderson argues that the trial court erred and abused its discretion in admitting Sean Saari's expert report for purposes of identifying and tracing separate property claims. Specifically, she argues that the expert report was untimely, that Saari was not properly qualified as an expert and that the trial court should not have relied on Saari's testimony regarding his tracing of C.M.F.'s separate property.

{¶ 75} Civ.R. 26(B)(7)(c) provides:

> Other than under subsection (d), a party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. The report of an expert must

disclose a complete statement of all opinions and the basis and reasons for them as to each matter on which the expert will testify. It must also state the compensation for the expert's study or testimony. It must also state the compensation for the expert's study or testimony. Unless good cause is shown, all reports and, if applicable, supplemental reports must be supplied no later than thirty (30) days prior to trial. An expert will not be permitted to testify or provide opinions on matters not disclosed in his or her report.

{¶ 76} A trial court's decision to admit or exclude evidence, including expert testimony, will not be disturbed absent an abuse of discretion that causes material prejudice. *Braxton v. Kilbane*, 2017-Ohio-185, ¶ 9 (8th Dist.), citing *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66 (1991). Likewise, a determination of whether a witness is qualified to testify as an expert is a matter within the trial court's discretion and will not be reversed ""unless there is a clear showing"" that the trial court abused its discretion. *Victor v. Kaplan*, 2020-Ohio-3116, ¶ 56 (8th Dist.), quoting *State v. Lumbus*, 2016-Ohio-380, ¶ 95 (8th Dist.), quoting *State v. Wages*, 87 Ohio App.3d 780, 786 (8th Dist. 1993).

{¶ 77} "The concept of voir dire as applied to an expert witness is concerned with the qualification of that witness as an expert, not the content of his testimony." *Hirschfeld v. Spring Creek Gravel Co.*, 1984 Ohio App. LEXIS 9530, at *7 (3d Dist. Mar. 5, 1984). It is reasonable that, prior to permitting an expert to testify and give expert opinion testimony, his qualification must be established. *Id.* The opposing side is then given an opportunity, before the witness enters any substantive testimony, to cross-examine solely on the issue of qualification. *Id.*

{¶ 78} One purpose of conducting voir dire of a witness is to avoid unfair prejudice or surprise. *Sindel v. Toledo Edison Co.*, 87 Ohio App. 3d 525, 529 (8th Dist. 1993). Nonetheless, the admissibility of expert testimony rests within the discretion of the trial court. *Id.* This court has previously held that "the better practice is to allow voir dire." *Pittock v. Kaiser Found. Health Plan*, 1998 Ohio App. LEXIS 2175, at 14-15 (8th Dist. May 14, 1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 343 (1993). Because there was no substantial likelihood of surprise in the testimony from Saari at issue in this case, the trial court did not abuse its discretion in denying Mullinax's counsel the opportunity to voir dire Saari. *Id.*

{¶ 79} Anderson also argues that Saari's expert report should not have been considered because it was untimely. She specifically argues that the discovery deadline was January 17, 2022 and Mullinax's counsel did not serve Saari's expert report on her counsel until 5:01 p.m. on that date.

{¶ 80} On December 23, 2021, the trial court issued an amended trial order that stated "[u]nless otherwise ordered, all expert reports shall be served on opposing counsel by January 17, 2022." Mullinax served his expert report on Anderson's counsel on January 17, 2022 in accordance with that deadline. Moreover, our review of the record reflects that Saari was included in Mullinax's witness list filed with the court on July 22, 2021. Based on the fact that the expert report was provided in accordance with the trial court's deadline and the identity of the expert witness was provided months in advance, we cannot conclude that

Anderson was unfairly surprised by Saari's testimony such that the trial court abused its discretion in admitting Saari's expert report.

{¶ 81} Finally, Anderson argues that the trial court should not have relied on Saari's expert report because it was improper expert testimony. Specifically, she argues that Saari did not present any information that the trial court was unable to determine and Saari's methodology was flawed.

{¶ 82} In determining whether an expert's opinion satisfies the requirements of Evid.R. 702(C), i.e., whether the opinion is reliable and, therefore, admissible, we consider whether the principles and methods employed by the expert to reach that opinion are reliable, and "whether the expert's testimony 'assist[s] the trier of fact in determining a fact issue or understanding the evidence.'" *Victor v. Kaplan*, 2020-Ohio-3116, ¶ 57 (8th Dist.), quoting *Miller v. Bike Athletic Co.*, 1998-Ohio-178. "The 'ultimate touchstone is helpfulness to the trier of fact.'" *Id.*, quoting *Miller*.

{¶ 83} Our review of the record demonstrates that Saari testified as to his qualifications as an expert witness. Saari holds a master's degree in business administration and is a certified public accountant. He is accredited in business valuation by the American Institute of Certified Public Accountants and holds a certified valuation analyst designation. Saari routinely handles business valuations and financial reporting and analyses. With respect to Saari's methodology, he performed a detailed analysis of numerous financial accounts and directly traced the assets in those accounts.

{¶ 84} We cannot conclude that the trial court abused its discretion in relying on Saari's expert testimony and report. Anderson's first assignment of error is overruled.

## II. Separate Property Determination and Distributive Award

{¶ 85} In her second assignment of error, Anderson argues that the trial court erred and abused its discretion in dividing the marital property when it awarded Mullinax separate property interests that were not properly traced and failed to award her a distributive award. Anderson argues that because Saari's expert testimony was inadmissible, the trial court erred and abused its discretion in relying on this testimony to justify an award of separate property to Mullinax. Anderson also argues that the trial court erred and abused its discretion by failing to award her a distributive award for Mullinax's financial misconduct.

## A. Separate Property Determination

{¶ 86} We reiterate that the trial court did not err or abuse its discretion by admitting, and subsequently relying on, Saari's expert report and testimony. The Ohio Supreme Court has long recognized that a trial court must have discretion to do what is equitable upon the facts and circumstances of each divorce case. *Hertzfeld v. Hertzfeld*, 2023-Ohio-4411, ¶ 16, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). Therefore, when reviewing a trial court's determination in a domestic-relations case, an appellate court generally applies an abuse of discretion standard. *Id.*, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130 (1989). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way

regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 87} Here, Anderson failed to provide her own expert to challenge Saari's testimony concerning the tracing of the various financial accounts and/or to discredit Saari's method of tracing. A trier of fact "'"may not disregard credible and uncontradicted expert testimony[.]"'" *Victor*, 2020-Ohio-3116, at ¶ 65, quoting *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2016-Ohio-7461, ¶ 26 (9th Dist.), quoting *State v. White*, 2008-Ohio-1623, ¶ 74.

{¶ 88} When distributing property in a divorce proceeding, the trial court must first determine what constitutes marital property and what constitutes separate property. *Smith v. Smith*, 2022-Ohio-299, ¶ 75 (8th Dist.), citing *Herrera v. Phil Wha Chung*, 2021-Ohio-1728, ¶ 27 (8th Dist.), citing *Comella v. Comella*, 2008-Ohio-6673, ¶ 38 (8th Dist.), citing R.C. 3105.171(B). Marital property includes all real and personal property and interests in real and personal property that is currently owned by either or both spouses and that was acquired by either or both spouses during the marriage. R.C. 3105.171(A)(3). Separate property includes property acquired prior to the date of marriage, or through inheritance or gift, or acquired with nonmarital funds after separation. R.C. 3105.171(A)(6).

{¶ 89} R.C. 3105.171 governs property distribution. R.C. 3105.171(C)(1) mandates an equal division of marital property, or if an equal division is inequitable, the court must divide the martial property equitably. *Strauss v. Strauss*, 2011-Ohio-3831, ¶ 37 (8th Dist.), citing *Neville v. Neville*, 2003-Ohio-

3624. To determine what is equitable, a trial court must consider the factors set forth in R.C. 3105.171(F). *Id.*

{¶ 90} A trial court's characterization of property as marital or separate property is a mixed question of law and fact that will not be reversed unless it is against the manifest weight of the evidence. *Id.*, citing *Saks v. Riga*, 2014-Ohio-4930, ¶ 35, citing *Williams v. Williams*, 2011-Ohio-939, ¶ 8. As such, this court will not disturb the trial court's distribution of separate property absent an abuse of discretion. *Id.* If there is some competent, credible evidence in the record to support the trial court's decision, there is no abuse of discretion. *Strauss v. Strauss*, 2011-Ohio-3831, ¶ 35 (8th Dist.), citing *Darsha Dilranjan Kapadia v. Kapadia*, 2011-Ohio-2255, citing *Wilburn v. Wilburn*, 2006-Ohio-2553.

{¶ 91} Anderson argues that the trial court abused its discretion by awarding Mullinax his separate property claims. Specifically, she argues that the trial court improperly awarded Mullinax his Vanguard retirement and brokerage accounts and his T. Rowe Price accounts because he did not prove, by a preponderance of the evidence, that the contents of these accounts could be traced to a separate property source. We disagree.

{¶ 92} A review of the record reflects that Mullinax presented competent, credible evidence, in the form of his own testimony, expert testimony and financial statements showing that the accounts in question were his separate property. Mullinax presented evidence that the property in question was either inherited and/or was an account established prior to the marriage. For these reasons, the

trial court did not abuse its discretion in awarding Mullinax various accounts as separate property.

**B. Distributive Award**

{¶ 93} Anderson also claims that, because Mullinax violated the mutual restraining orders by liquidating assets that were subject to a division of property, his acts constituted financial misconduct for which the trial court should have compensated her with a distributive award.

{¶ 94} R.C. 3105.171(E)(4) provides that if a spouse has engaged in financial misconduct, including but not limited to the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property. *A.E. v. J.E.*, 2024-Ohio-1785, ¶ 28 (8th Dist.). The complaining spouse bears the burden of proving the financial misconduct. *Id.*, citing *Victor*, 2020-Ohio-3116, at ¶ 138.

{¶ 95} "As applied to the division of marital property, 'financial misconduct necessarily implicates wrongdoing such as one spouse's [intentional] interference with the other's property rights or the offending spouse's profiting from the misconduct.'" *Young v. Young*, 2022-Ohio-2535, ¶ 6 (9th Dist.), quoting *Tustin v. Tustin*, 2015-Ohio-3454, ¶ 44. Thus, financial misconduct requires something more than just dishonest behavior; it also requires some element of wrongful intent. *Id.*, citing *Bucalo v. Bucalo*, 2005-Ohio-6319, ¶ 30 (9th Dist.), and *Havrilla v. Havrilla*, 2014-Ohio-2747, ¶ 47 (9th Dist.).

{¶ 96} Anderson asserts that Mullinax committed financial misconduct when he liquidated $20,000 from a Vanguard account to retain Saari's services for the underlying case and points to various withdrawals from other accounts. According to Anderson, this was a violation of the mutual restraining order in place in the case; moreover, she asserts that Mullinax failed to disclose these actions prior to trial in order to avoid repercussions for the financial misconduct.

{¶ 97} It is undisputed that Mullinax made several withdrawals from restrained accounts. However, our review of the record reflects that Anderson failed to meet her burden of showing that Mullinax did so with wrongful intent. As Mullinax testified at trial, he believed that the accounts at issue were his separate property. As discussed above, the trial court agreed and awarded him these accounts and this court affirms that award. Anderson's argument that she is entitled to a distributive award for Mullinax's purported financial misconduct is premised on her assertion that Mullinax liquidated marital property. Because we have affirmed the trial court's distribution of property, including the award of these accounts to Mullinax as his separate property, Anderson's argument is fundamentally flawed. Therefore, we cannot conclude that the trial court abused its discretion in declining to find that Mullinax committed financial misconduct. Likewise, in the absence of a finding of financial misconduct, Anderson was not entitled to a distributive award. Anderson's second assignment of error is overruled.

## III. Child Tax Credit

{¶ 98} In her third assignment of error, Anderson argues that the trial court erred and abused its discretion by ordering the parties to alternate the child tax credit. She argues that because she has custody of the minor children more than Mullinax does, under the trial court's divorce decree, she is entitled to the tax credit every year.

{¶ 99} A trial court's decision awarding the tax dependency exemption to a party is reviewed for an abuse of discretion. *Brownlee v. Brownlee*, 2012-Ohio-1539, ¶ 34 (8th Dist.), citing *Corple v. Corple*, 123 Ohio App.3d 31 (7th Dist. 1997). R.C. 3119.82 governs the designation of a parent entitled to claim the federal income tax reduction as follows:

> If the parties agree on which parent should claim the children as dependents, the court shall designate that parent as the parent who may claim the children. If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parents do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

{¶ 100} "'[A] trial court is not required to state on the record its reasons for awarding tax dependency exemptions.'" *Shipman v. Shipman*, 2015-Ohio-4419,

¶ 30 (3d Dist.), quoting *Clark v. Clark*, 2007-Ohio-5771, ¶ 35 (3d Dist.). The record need only include financial data related to the aforementioned factors to support the trial court's decision. *Id.* at ¶ 31. Here, the record reflects that the trial court considered these factors and provided a thorough explanation of its reasoning. The journal entry stated, in relevant part:

> "[W]hen the lower court considers the net tax benefit to each parent, it must look at the tax brackets of each parent. *Evangelista v. Horton*, 7th Dist. No. 08 MA 244, 2011-Ohio-1472, ¶ 74-75. While there are a variety of factors that determine a person's tax liability other than the tax bracket, this factor is certainly determinative in awarding the dependency exemption. *Id.* at ¶ 74. This factor determines the net benefit of the exemption itself because it sets the value of the exemption to each party. The actual value of the dependent child exemption is the amount of the exemption in that tax year, multiplied by the rate of taxation paid by the party." *Id.* at ¶ 51.

> "The net value of the deduction itself, however, does not determine the total tax benefit under either [*Singer v. Dickinson*, 63 Ohio St.3d 408, 414, 588 N.E.2d 806 (1992)], or R.C. 3119.82, because while the net value of the ability to claim the exemption may be greater for the party who has the higher income (presuming that the individual with greater income pays tax at a higher rate), the party with the lower income may be eligible for other credits, deductions, or exemptions by virtue of the ability to claim a dependent child. This may result in a greater total tax savings due to that dependent child. For this reason, the lower court's inquiry must include not only the tax brackets of both parents, but also evidence "concerning whether or not the parties have other exemptions or deductions or taxable income, whether each party could file joint income tax return, whether or not either party has income that impacts the relevant federal, state, and local income tax rates" and any tax credits available to the parties both with and without the ability to claim the child as a dependent. *Boose v. Lodge*, 3d Dist. No. 6-03-04, 2003-Ohio-4257, ¶ 9; *see also Foster v. Foster*, 6th Dist. No. S-03-037, 2004-Ohio-3905, ¶ 21." *Id.*

> [Anderson] was designated the residential and custodial parent of the children and [Mullinax] was awarded visitation according to this Court's Standard Visitation Schedule. Therefore, [Anderson] spends more time with the children.

[Anderson's] annual income is $139,367, and a review of [Mullinax's] 2019 and 2020 tax returns show that his income was $43,624 and $59,961, respectively.

Therefore, [Anderson] falls into a higher tax bracket than [Mullinax]. However, [Mullinax] claimed all three minor children as exemptions in 2019, and two of the minor children in 2020 as the oldest child was no longer a minor. There is no other evidence in the record regarding which party would derive a greater benefit from claiming the children for tax purposes, but [Mullinax's] significantly lower income would more likely qualify him rather than [Anderson] for other credits, deductions, or exemptions.

Therefore, the Court finds that it is in the best interests of the minor children that both [Anderson] and [Mullinax] be entitled to claim the children for federal income taxes on alternating years.

{¶ 101} The trial court clearly considered the custody arrangement, the parties' respective financial and tax situations and the best interests of the minor children. Therefore, we cannot conclude that the trial court's decision ordering the parties to alternate the child tax exemption was an abuse of discretion. Anderson's third assignment of error is overruled.

## IV. Temporary Support Obligations

{¶ 102} In her fourth assignment of error, Anderson argues that the trial court erred and abused its discretion by failing to retroactively modify Mullinax's temporary support obligations and that it was unreasonable for the trial court not to retroactively award her temporary support because she incurred the majority of the children's expenses and had increased parenting time.

{¶ 103} Civ.R. 75(N) allows a party to request a temporary support order while the divorce or legal separation proceeding is pending. Civ.R. 75(N)(2)

provides that a party may request an oral hearing to modify a temporary support order. Civ.R. 75(N)(2) provides, in relevant part:

> Upon request, in writing, after any temporary spousal support . . . is journalized, the court shall grant the party so requesting an oral hearing within twenty-eight days to modify the temporary order. A request for oral hearing shall not suspend or delay the commencement of spousal support or other support payments previously ordered or change the allocation of parental rights and responsibilities until the order is modified by journal entry after the oral hearing.

{¶ 104} Our review of the record shows that the court denied Anderson's motion for a Civ.R. 75(N) hearing. Despite the trial court's apparent failure to strictly comply with Civ.R. 75, even if this court were to find that the trial court acted improperly by failing to hold a Civ.R. 75(N) hearing within 28 days of Anderson's motion, this failure does not necessarily constitute a reversible error. *Chattree v. Chattree*, 2014-Ohio-489, ¶ 64 (8th Dist.). It is incumbent upon Anderson to demonstrate that she was prejudiced by the court's failure to hold a hearing. *Id.*, citing *Thorp v. Thorp*, 2011-Ohio-1015, ¶ 39 (11th Dist.). "'When a party is able to fully litigate the issues regarding temporary support orders during the final divorce trial, the trial may constitute the Civ.R. 75(N)(2) hearing on temporary support orders.'" *Id.*, quoting *Doody v. Doody*, 2007-Ohio-2567, ¶ 44 (11th Dist.).

{¶ 105} In the instant case, the parties entered into an agreement pursuant to the October 2019 agreed judgment entry by which neither party would pay child support to the other. On August 30, 2021, Anderson filed a motion to modify temporary support. That motion was based on what she considered Mullinax's "voluntary" unemployment and underemployment during the divorce proceedings.

The trial court denied Anderson's motion. Following trial, during which both parties testified as to their respective incomes and expenses, the magistrate's decision found that Mullinax was voluntarily underemployed, imputed him an annual income of $175,000 and ordered him to pay child support in the amount of $1,559.87 monthly. "Thus, 'the divorce trial itself became a Civ.R. 75(N) hearing on the amount of reasonable temporary support.'" *Id.*, quoting *Doody* at ¶ 44. Given these circumstances, the trial court did not abuse its discretion in failing to hold a Civ.R. 75(N) hearing or in declining to retroactively modify support. Anderson's fourth assignment of error is overruled.

## V. Time Limitations at Trial

{¶ 106} In her fifth assignment of error, Anderson argues that the trial court erred by imposing arbitrary time limitations upon her presentation of evidence and testimony at trial.

{¶ 107} Under Evid.R. 611(A), "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." *M.F.S. v. B.T.S.*, 2024-Ohio-4680, ¶ 38 (8th Dist.). Cross-examination "shall be permitted on all relevant matters and matters affecting credibility." Evid.R. 611(B).

{¶ 108} This court has recently addressed the same time limitation — one hour for direct examination and 30 minutes for cross-examination — and held that

the limitation does not constitute an abuse of discretion without a demonstration of what evidence a party was prohibited from presenting because of the limitation and how the party was prejudiced. *M.F.S. v. B.T.S.*, 2024-Ohio-4680, ¶ 39, citing *Machen v. Miller*, 2024-Ohio-1270, ¶ 58 (8th Dist.).

{¶ 109} In support of her claim that the trial court's time limits violated her due process, Anderson asserts that she was prevented from effectively cross-examining Mullinax concerning his dissipation and concealment of assets during the divorce proceedings and she was prevented from effectively cross-examining Saari. Anderson generally asserts that the limitation was prejudicial because Evid.R. 611(B) provides that cross-examination shall be permitted on all relevant matters and matters affecting credibility. In response, Mullinax argues that the trial court erred in imposing arbitrary time limits and suggests that the court should have instead imposed otherwise reasonable time limits.

{¶ 110} Our review of the record reveals that both parties were afforded approximately the same time in which to present evidence and both parties were afforded the opportunity to conduct direct examination, cross-examination and re-cross examination of witnesses. While the trial court likely could have imposed less restrictive time limitations, it is not this court's position to instruct a judge how to conduct a trial. Moreover, neither party is able to adequately demonstrate how they were prejudiced by the time limitations. Therefore, we cannot conclude that the time limitations constituted an abuse of discretion. Anderson's fifth assignment of error is overruled.

**VI. Attorney Fees**

{¶ 111} In her sixth and final assignment of error, Anderson argues that the trial court erred and abused its discretion by failing to award her attorney fees and litigation expenses. She argues that the trial court should have awarded her $170,711.75 in attorney fees and litigation expenses because ordering her to pay this amount is unfair and inequitable in light of Mullinax's behavior throughout the divorce proceedings which caused her to incur substantial unnecessary fees. In response, Mullinax asserts that Anderson was the reason for much of the delay in the proceedings citing her continued refusal to participate in a psychological evaluation and other refusals to cooperate, generally.

{¶ 112} "[W]hen to determining whether to award attorney fees in divorce cases, 'the court must start with a presumption that attorney fees are the responsibility of the party who retains the attorney.'" *Victor v. Kaplan*, 2020-Ohio-3116, ¶ 127, quoting *Walpole v. Walpole*, 2013-Ohio-3529, ¶ 33 (8th Dist.). A court may award reasonable attorney fees if it determines that the award is equitable. *Id.*, citing *Allan v. Allan*, 2019-Ohio-2111, ¶ 100 (8th Dist.). In determining whether attorney fees are equitable, the court may consider the factors set forth in R.C. 3105.73(A). These factors include the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties and any other relevant factors the court deems appropriate. An award of attorney fees is within the sound discretion of the trial court and its award will not be overruled absent an attitude

that is unreasonable, arbitrary or unconscionable. *Id.*, citing *Cyr v. Cyr*, 2005-Ohio-504, ¶ 70 (8th Dist.), citing *Rand v. Rand*, 18 Ohio St.3d 356 (1985).

{¶ 113} In reviewing the magistrate's decision, the trial court agreed that it was reasonable and equitable that each party pay their own attorney fees and legal expenses. Specifically, the trial court found that Anderson has an annual income of $139,267, that Mullinax has access to substantial assets, that an award of spousal support was not appropriate in the case and that both parties failed to strictly abide by the court's orders throughout the divorce proceedings. As such, the trial court determined that Anderson failed to set forth sufficient evidence to overcome the presumption that she be responsible for her own attorney fees.

{¶ 114} We agree. Our review of the record reveals that both parties have financial advantages and that both parties engaged in conduct that likely unnecessarily prolonged and complicated the divorce proceedings. Anderson has not pointed to anything in the record that would overcome the presumption that she be responsible for her own attorney fees. Anderson's sixth assignment of error is overruled.

**Mullinax's Cross-Appeal**

**I. Custody Determination**

{¶ 115} In his first cross-assignment of error, Mullinax argues that the trial court erred and abused its discretion in ordering that Anderson be awarded sole custody of the parties' minor children. Mullinax argues that in doing so, the trial court has permitted Anderson "to use the children as pawns."

{¶ 116} When reviewing a ruling pertaining to the allocation of parental rights, the trial court is to be afforded great deference. *Strauss v. Strauss*, 2011-Ohio-3831, ¶ 8 (8th Dist.), citing *Miller v. Miller*, 37 Ohio St.3d 71 (1988). Further,

> the discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceedings and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct.

*Id.*, citing *Miller* at ¶ 74. We therefore review a trial court's allocation of parental rights and responsibilities for an abuse of discretion.

{¶ 117} Pursuant to R.C. 3109.04(B)(1), the trial court was required to consider the best interest of the children when allocating parental rights and responsibilities. *A.A.O. v. A.M.O.*, 2022-Ohio-2767, ¶ 43 (8th Dist.), citing *O'Malley v. O'Malley*, 2013-Ohio-5238, ¶ 68. In making a best interest determination, the court must consider the factors enumerated in R.C. 3109.04(F)(1).

{¶ 118} In arguing that the court abused its discretion in making Anderson the residential parent and legal custodian of the minor children, Mullinax asserts that the trial court failed to consider the R.C. 3109.04(F) statutory factors and failed to consider Anderson's conduct throughout the litigation including her refusal to follow court orders and her improper influence over the children. This argument is undermined by the record.

**{¶ 119}** Our review of the record, including the divorce decree demonstrates that the trial court considered both the best interest of the minor children and the factors set forth under R.C. 3109.04. Specifically, the trial court considered the testimony of both parties, the GAL's testimony and report and the relationship and parenting arrangement both parties had with the minor children:

> [Anderson] testified that she had been the children's primary caregiver during the marriage and during the pendency of the divorce. She further testified that [Mullinax] inconsistently exercised his parenting time and the children did not want to live with their father. [Mullinax] testified that he had a good relationship with the children but acknowledged that there had been a change in the relationships during the pendency of the divorce.
>
> The GAL testified at trial regarding the children's relationship with their parents and to her report. In her report, the GAL noted that [the parties] have a high-conflict relationship and that neither party seems to encourage parenting time with the other parent. She further indicated that the children stressed their preference to live with [her.]
>
> The GAL recommended shared parenting, but with several conditions. She recommended [the parties] work with a communication coach, that the parties and the children should engage with mental health professionals, including family therapy, that a Parenting Coordinator be put in place, and that the parents continue to utilize Our Family Wizard for communication.
>
> Upon reviewing the testimony and evidence and the factors in R.C. 3109.04 and 3109.05 the Magistrate concluded that shared parenting was not in the best interests of the minor children and ordered that [Anderson] be designated as residential parent and legal custodian. [Mullinax] was granted visitation pursuant to the Court's standard parenting schedule.
>
> The Court has reviewed the transcripts and record and has considered the factors set forth in R.C. 3109.04 and 3109.05 and agrees with [the magistrate]. [The parties] have two minor children, ages 13 and 16 years old. The children have consistently been in [Anderson's] care since birth and have a strong relationship with [Anderson.] At this time, the children do not have a close relationship with [Mullinax.]

[The parties] have a high-conflict relationship, making the conditions the GAL recommended for a successful shared parenting plan untenable. Therefore, having considered the factors set forth in R.C. 3109.04 and 3109.05, and due to the high-conflict nature of the relationship between [the parties], shared parenting is not in the children's best interests.

{¶ 120} The trial court clearly considered all the relevant factors in making its custody determination, including the high-conflict nature of the relationship between the parties as it related to their shared parenting. Moreover, we note that, as discussed in other sections of this opinion, both parties repeatedly failed to abide by the terms of court orders throughout the proceedings. Further, because by the time of trial neither parent had requested shared parenting, the trial court was not empowered to reward shared parenting and was instead required to designate one parent as the residential parent. R.C. 3109.04(A)(1); *Preston v. Preston*, 2010-Ohio-3711, ¶ 11 (4th Dist.); *Stephens v. Stephens*, 2010-Ohio-4964, ¶ 16 (5th Dist.). For these reasons, we cannot conclude that the court abused its discretion in awarding Anderson legal custody of the minor children. Mullinax's first cross-assignment of error is overruled.

## II. Contempt

{¶ 121} In his second cross-assignment of error, Mullinax argues that the trial court erred and abused its discretion in failing to find Anderson in contempt of court for violating multiple court orders. He argues that the trial court should have granted his numerous motions to show cause and find Anderson in contempt for failing to submit to a psychological evaluation, failing to facilitate visitation,

failing to maintain her equal share of the monthly minimum payment due on the parties' KeyBank overdraft protection account and Discover card and for her unilateral termination of Mullinax's dental coverage. Mullinax also argues that he should have been awarded substantial attorney fees for these instances of misconduct by Anderson.

{¶ 122} "'With respect to a trial court's decision on a motion to show cause why a party should not be held in contempt, an appellate court cannot reverse unless the trial court abused its discretion.'" *In re A.B.M.*, 2020-Ohio-3590, ¶ 46 (8th Dist.), quoting *Baxter v. Thomas*, 2015-Ohio-2148, ¶ 78 (8th Dist.), citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10 (1981). Contempt of court is the disobedience or disregard of a court order or a command of judicial authority. *Whitman v. Monastra*, 2000 Ohio App. LEXIS 4637, * 8 (8th Dist. Oct. 5, 2000), citing *In re Parker*, 105 Ohio App.3d 31 (4th Dist. 1995). Any sanction for civil contempt must allow the contemnor an opportunity to purge the contempt. *Id.*, citing *Carroll v. Detty*, 113 Ohio App. 3d 708 (4th Dist. 1996).

{¶ 123} Mullinax's first argument in support of this cross-assignment of error is that Anderson should have been held in contempt for failing to undergo a psychological evaluation despite being ordered to do so by the trial court. There is no question that Anderson failed to comply with the court's order to undergo a psychological evaluation. However, the reason for ordering Anderson to undergo a psychological evaluation was to aid the court in its custody determination. As the trial court pointed out, trial in this matter has already been concluded and parental

rights and responsibilities have been allocated. Therefore, even if Anderson were found to be in contempt for failing to undergo a psychological evaluation, there would be no reasonable purge condition to impose upon her. Moreover, "[a] trial court abuses its discretion by ordering purge conditions which are unreasonable or where compliance is impossible." *Whitman* at *18, citing *Burchett v. Miller*, 123 Ohio App. 3d 550 (6th Dist. 1997). For these reasons, we cannot conclude that the trial court abused its discretion in not finding Anderson in contempt for failing to undergo a psychological evaluation.

{¶ 124} Mullinax's second argument in support of this cross-assignment of error relates to Anderson's alleged failure to facilitate visitation between him and the children. Mullinax asserted that Anderson actively withheld parenting time from him in violation of the relevant court orders in place during the divorce proceedings. Anderson, in response, argues that she did not actively withhold parenting time but that the teenage minor children chose to disregard her instructions to spend time with Mullinax and repeatedly refused to visit him in accordance with the parenting schedule.

{¶ 125} We note that although the trial court granted Anderson's motion for an in camera interview of the minor children, the record fails to reflect that any interviews took place. Therefore, our analysis of the children's behavior and motivations are limited to what can be gleaned from the parents' testimony, the GAL report, the GAL's testimony and the remainder of the record.

{¶ 126} The record reflects that the minor teenage children had a contentious relationship with Mullinax and that they frequently refused to engage in visitation with him. The record is replete with examples of conflicts between Mullinax and the children. Further, Anderson testified that she wanted the children to have a relationship with Mullinax and had attempted to facilitate visitation. On this record, we cannot conclude that the trial court abused its discretion in declining to find Anderson in contempt for failing to facilitate visitation.

{¶ 127} Mullinax also supports this cross-assignment of error with the argument that Anderson failed to maintain her share of monthly expenses. With respect to the allegation that Anderson failed to maintain her share of monthly expenses in violation of the October 2019 agreed judgment entry, we note that the record contains numerous allegations from both parties that the other failed to comply with these obligations. Both parties have included documentation supporting their respective claims that the other party has failed to comply with the terms of the temporary support order.

{¶ 128} While Mullinax's objections to the magistrate's decision included numerous arguments related to his motions to show cause, he did not make this specific argument. Further, the magistrate's decision denying those motions to show cause was entered on January 10, 2023. Mullinax filed objections to the magistrate's decision on January 24, 2023. On July 10, 2023, the trial court entered

a decision overruling his objections to the magistrate's decision. On July 11, 2023, the trial court adopted the magistrate's decision.

{¶ 129} Neither Anderson's notice of appeal nor Mullinax's notice of cross-appeal in this case makes any reference to the July 10 or July 11, 2023 judgment entries. Both notices of appeal refer strictly to the trial court's September 27, 2023 and September 29, 2023 judgment entries. App.R. 3(D) requires that the notice of appeal "shall designate the judgment, order or part thereof appealed from." *State v. Henderson*, 2014-Ohio-2061, ¶ 8. "A court of appeals lacks jurisdiction to review a judgment or order that is not designated in the notice of appeal." *Id.*, citing *Parks v. Baltimore & O.R.R.*, 77 Ohio App.3d 426 (8th Dist. 1991). However, this court "has routinely held that 'interlocutory orders . . . are merged into the final judgment . . . thus, an appeal from the final judgment includes all interlocutory orders merged with it.'" *Wagner v. Wagner*, 2024-Ohio-728, ¶ 13 (8th Dist.), quoting *Crenshaw v. Cleveland Police Dept.*, 2022-Ohio-3915, ¶ 2, fn. 1. Thus, this court has jurisdiction over all orders issued prior to and including the September 29, 2023 order.

{¶ 130} In overruling Mullinax's objections related to his argument that Anderson failed to comply with the temporary support order and pay her share of overdraft protection, the trial court found that Mullinax failed to provide clear and convincing evidence that Anderson had not made monthly payments pursuant to the agreed judgment entry. Our review of the record reflects that this was not an abuse of discretion.

**{¶ 131}** Mullinax supports this cross-assignment of error with the argument that Anderson unilaterally terminated his dental coverage in violation of court orders. Anderson testified that her employer coverage changed during the pendency of the case and that Mullinax merely needed to contact the provider to obtain a new insurance card. While the issue of whether Anderson unilaterally terminated Mullinax from her health insurance coverage arose at trial, the issue of dental coverage was not specifically explored. Because Mullinax, as the party moving to show cause for why Anderson should not be held in contempt, had the burden to establish, by clear and convincing evidence, that Anderson unilaterally terminated his dental coverage, we cannot say on this record that he met that burden.

**{¶ 132}** For these reasons, the trial court did not abuse its discretion by declining to hold Anderson in contempt of court. Mullinax's second cross-assignment of error is overruled.

### III. Marital Debts and Liabilities

**{¶ 133}** In his third cross-assignment of error, Mullinax argues that the trial court erred and abused its discretion in its allocation of marital debts and liabilities. Mullinax argues that it is not fair, just or equitable for the parties to equally share the marital debts and liabilities as ordered by the trial court. In support of this position, Mullinax again points to the fact that Anderson repeatedly ignored court orders and he asserts that she unilaterally incurred tens of thousands of dollars in debt during the divorce proceedings for which he should not share responsibility.

{¶ 134} To the extent to which Mullinax's arguments in support of this cross-assignment of error relate to the assertion that Anderson failed to comply with the October 2019 agreed judgment entry, we note that this has been addressed, at length, throughout this opinion.

{¶ 135} Our review of the record reflects little testimony or evidence as to which debts were paid, how much was paid by either party or which party incurred specific debts. To the extent that there was testimony as to some of Anderson's debt, the record reflects that she incurred debt during the pendency of the divorce proceedings because her expenses outweighed her income and Mullinax often failed to pay his portion of shared expenses. In the absence of additional evidence in the record, we cannot say that the trial court's order for the parties to equally share the marital debts and liabilities amounts to an abuse of discretion. Mullinax's third cross-assignment of error is overruled.

## IV. Income Determinations

{¶ 136} In his fourth and final cross-assignment of error, Mullinax argues that the trial court erred and abused its discretion in its determinations of the parties' incomes. He argues that Anderson's income in the divorce decree is understated because her income increased during the pendency of the case. Additionally, Mullinax argues that the trial court improperly imputed income to him in the amount of $175,000.

{¶ 137} The trial court is required to determine the parents' annual income for the purposes of calculating child support. *Hertzfeld v. Hertzfeld*, 2023-Ohio-

4411, ¶ 53 (8th Dist.), citing *Sweeney v. Sweeney*, 2019-Ohio-1750, ¶ 24 (1st Dist.). R.C. 3119.01 defines "income" as either (1) the gross income of a parent employed to full capacity, or (2) the sum of the gross income of the parent and any potential income of an unemployed or underemployed parent. *Id.*, citing R.C. 3119.01(C)(10)(a)-(b). Pursuant to R.C. 3119.01(C)(10)(b) and 3119.01(C)(18), "'the trial court is permitted to impute potential income to a parent who is voluntarily unemployed or voluntarily underemployed for the purpose of determining the parent's child support obligation.'" *Id.*, quoting *Yenni v. Yenni*, 2022-Ohio-2867, ¶ 26 (8th Dist.). To determine the potential income of a party who is voluntarily unemployed or underemployed, the court must consider several factors, including the parent's prior employment experience; the parent's education; the parent's physical and mental disabilities if any; the availability of employment in the parent's geographic area the prevailing wage and salary in the parent's geographic area and the parent's special skills and training.

{¶ 138} The record reflects that the trial court considered these factors. The trial court noted that Mullinax holds an MBA from Harvard University and significantly outearned Anderson for the duration of the marriage, historically earning over $175,000 annually. Our review of the record supports the trial court's finding that Mullinax was voluntarily underemployed and the imputed income of $175,000. These findings do not amount to an abuse of discretion.

{¶ 139} With respect to Anderson's income, Mullinax points out that Anderson testified at trial that her annual salary was approximately $150,000.

Despite this, the trial court used Anderson's 2020 and 2021 W-2 forms, which indicated that her annual income was $137,465.40 and $139,267.88, respectively. Using Anderson's W-2's to determine her income for support purposes does not amount to an abuse of discretion. For these reasons, Mullinax's fourth cross-assignment of error is overruled.

{¶ 140} Judgment affirmed.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
MARY J. BOYLE, J., CONCUR